**Byron LABEACH, Plaintiff,**

v.

**NESTLE COMPANY INC., et al., Defendants.**

**No. 85 Civ. 7348 (PKL).**

United States District Court,
S.D. New York.

April 20, 1987.

Paulette M. Owens, New York City, for plaintiff.

Schmeltzer, Aptaker & Sheppard, P.C., Washington, D.C., (Ira Michael Shepard, Paul Monroe Heylman, Robert Lewis Duston, of counsel), for defendants.

LEISURE, District Judge:

Plaintiff Byron LaBeach commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and for pendent state law claims, seeking monetary damages. Defendants were plaintiff's former employer, The Nestle Company, Inc. ("Nestle"), and nine individual officers and managers who were employed by Nestle at the time this case arose. Plaintiff alleges that he was discriminated against, on the basis of race, by defendants with respect to the terms, conditions and privileges of his employment, subjected to psychological harassment, and that defendants conspired to terminate, demote or transfer him in retaliation for his filing of grievances, in violation of the company's own policies and procedures.

Plaintiff filed this action on September 18, 1985. An initial pretrial conference was held by the Court on December 30, 1985. At the next pretrial conference, held on June 6, 1986, the Court set September 26, 1986, as the deadline for the completion of all discovery. Defendants completed their discovery of plaintiff prior to the cut-off date. Plaintiff has apparently failed to take any discovery of defendant.

At the next pretrial conference, held on September 26, 1986, Nestle sought the Court's permission to move for summary judgment on the pendent state claims, as well as to all Title VII claims, allegedly outside the limitations period and for the dismissal of particular individual defendants. The parties subsequently stipulated that the pendent state claims and all claims against the individual defendants would be dismissed. Therefore, plaintiff's action is now limited to his Title VII claim against Nestle.

The case is now before the Court upon Nestle's motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 with respect to some of plaintiff's claims under Title VII. Nestle claims that many of the Title VII claims set out in the Complaint are time barred. Of the remaining claims, contained within the Complaint, Nestle argues that plaintiff was not denied promotional opportunities. For the reasons set forth below, Nestle's motion is granted.

## FACTUAL BACKGROUND

The following facts are developed from the sworn testimony of the deposition of plaintiff, and the affidavits and the Rule 3(g) statements submitted by the parties in this motion, as specifically indicated by references below.[1]

Plaintiff was hired by Nestle as a sales management trainee on July 17, 1978. Plaintiff's starting salary at Nestle was approximately 40 percent more than he had been earning at his prior job. Deposition of Byron LaBeach, dated May 21, June 11, and September 22, 1986 ("LaBeach Dep.") at 6–8; Affidavit of Paul Monroe Heylman, Esq., sworn to on Dec. 1, 1986 ("Heylman Aff."), Ex. 1 attached thereto.

Plaintiff received sales training at Nestle's corporate headquarters in White Plains, New York, participated in field sales training in the New England region, and then was assigned to the Secaucus, New Jersey office to complete his field training. During his field training, plaintiff attended every training course that Nestle offered, including the five-day PSS (Positive Selling Skills) intensive training course. Plaintiff was appointed, effective

---

**1.** Plaintiff did not, as required by Local Rule 3(g), submit a statement of material facts as to which he contends that there exists a genuine issue to be tried. Instead, plaintiff submitted a "Statement of Material Facts Not In Genuine Dispute" ("P. Statement") in which he conceded that most of the relevant facts in Defendant's Statement of Material Facts were not in genuine dispute. Plaintiff denied that certain of Defendant's statements were true, but did not affirmatively set out other statements of facts in genuine dispute. Moreover, the Court notes that plaintiff has failed to present any evidence to the Court by way of affidavits, depositions, interrogatories or admissions in opposition to defendant's motion.

November 29, 1978, to a position under Mike Kohut in the Chocolate Field Sales Department in Brooklyn, New York. Defendants' Statement Pursuant to Local Civil Rule 3(g) ("D. 3(g) Statement") at ¶¶ 1–4. Plaintiff alleges that he experienced various discriminatory acts during his tenure as an Account Manager. Complaint at ¶ 2.

Plaintiff's initial position involved making sales calls on both "direct accounts" and "retail store accounts" for three different customers—Associated Stores, Gristede's and Royal Farms. Plaintiff's job as a direct account salesman was to contact the three major food distributors to whom he was assigned in an attempt to convince them to buy various Nestle products in bulk. Plaintiff's role as a retail sales representative required him to visit stores and perform a variety of tasks, including ensuring that the shelves were neat and that all products which were either out of stock or low were reordered by the customer, selling displays and special programs to the individual store, and reclaiming damaged or out-of-date merchandise. The latter position also involves shelf work, stock management, merchandising and paperwork. D. 3(g) Statement at ¶¶ 5–8.[2]

Nestle retail sales representatives and direct account managers work on their own in the field. Supervisors check sales representatives' work through the paperwork they submit, recording each sales call and new order, through a "work with" when they accompany sales representatives to monitor performance, and by conducting "back checks," a procedure in which the manager checks the sales representatives' work shortly after the sales representative has serviced a store. D. 3(g) Statement at ¶¶ 12–13.

On October 23, 1979, plaintiff received a reprimand for falsifying reports, and was told he would be immediately terminated for further acts of falsification. On that same day, he was also instructed on the ten points for a quality retail call.[3]

From 1979 until 1980, plaintiff reported to Mike Kohut. Beginning in 1980, plaintiff began reporting to Robert McNiff. At his deposition, plaintiff conceded that he got along well with McNiff and that McNiff did not discriminate against him. LaBeach Dep. at 112–114. McNiff's performance appraisals of plaintiff during 1980–1982 state that plaintiff was anxious to advance in the management ranks to a position of greater responsibility and obtain additional direct account responsibility. McNiff, however, gave plaintiff only average to poor employment ratings. D. 3(g) Statement at ¶¶ 16–17.

In March, 1983, Erwin Diner, one of McNiff's supervisors, worked with plaintiff. On April 4, 1983, Diner outlined in a written memorandum several deficiencies in plaintiff's performance that Diner observed on March 31, 1983. Plaintiff received a copy of this memorandum. On April 14, 1983, a meeting was held between plaintiff and McNiff, Mike Halfond and Wally Molla, during which plaintiff's performance was discussed. On April 21, 1983, McNiff wrote a memorandum to plaintiff outlining Nestle's expectations in specific areas of plaintiff's performance. Plaintiff then requested a meeting to discuss his performance and the expectations of Nestle. This meeting was held on May 13, 1983. D. 3(g) Statement at ¶¶ 18–21.

On June 24, 1983, a meeting was held between plaintiff and McNiff, Mike Hal-

---

**2.** The most significant facets of shelf work and stock management are the rotation of stock, checking distribution, ensuring that product pricing and shelf pricing match, noticing out-of-stock items and determining the cause, checking front-end rack, checking and replacing shelf tags, ordering out-of-stock items, and removing unsaleable items. The important aspects of merchandising are walking the perimeter of the store to check for competitive displays, selling additional facings on the shelves, selling promotion and specials, making sales presentations and building displays. The important paper-

work duties are completing and submitting, in a timely fashion, route cards, daily activity reports, promotograms and other reports. D. 3(g) Statement at ¶¶ 9–11.

**3.** Plaintiff denies that he was reprimanded or instructed on these ten points. P. Statement at ¶ 14–15. Defendant, however, provides concrete evidence that plaintiff was reprimanded and so instructed. *See* LaBeach Dep. at 92; *see also* Heylman Aff. Exhibit 4.

fond, and William Theroux, to discuss a back-check of LaBeach's work that was conducted on June 22, 1983. On July 11, 1983, McNiff wrote a memorandum to plaintiff which stated that McNiff was dissatisfied with the work he had checked on June 22, and outlined specific findings. McNiff also informed plaintiff that further noncompliance with Nestle directives would lead to disciplinary action and could serve as cause for dismissal. D. 3(g) Statement at 23.[4]

In August, 1983, Nestle undertook a reorganization of its sales force that involved the merger of the "chocolate" and "coffee and tea" divisions into the "grocery sales division." Nestle's reorganization resulted in a significant movement of personnel, including the demotion, transfer or retirement of many managers, supervisors and sales representatives. Plaintiff concedes the aforementioned facts but alleges, in a conclusory fashion, without more, that more minorities, including plaintiff, were adversely affected by the reorganization than white employees similarly situated. However, plaintiff does not deny that Nestle's reorganization was for legitimate business reasons. At the time of the reorganization, plaintiff was demoted to the position of Retail Sales Representative and was relieved of his direct account responsibilities, an act he claims is discriminatory. Subsequent to the reorganization, plaintiff reported directly to Dominick Ferrara. D. 3(g) Statement at ¶¶ 24–28.

On October 20, 1983, Ferrara wrote a memorandum to plaintiff, reprimanding plaintiff for tardiness. Ferrara wrote a memorandum, on November 1, 1983, in which he described a backcheck he had conducted with plaintiff on October 28, 1983. In this memorandum Ferrara listed specific deficiencies in plaintiff's performance and concluded that plaintiff had not been following Nestle's procedures and guidelines for retail sales personnel. In January 1984, Ferrara placed plaintiff on a 90–day review for substandard performance. D. 3(g) Statement at ¶¶ 29–31.

On March 2, 1984, Ferrara wrote a memorandum to plaintiff which indicates that in the preceding month plaintiff had rarely worked his assigned hours. Between January 5, 1984 and April 9, 1984, Ferrara or Diner conducted more than four performance reviews of plaintiff. On April 9, 1984, plaintiff was placed on 90–day probation because of deficiencies in his performance. Between April 10, 1984 and July 10, 1984, Ferrara or Diner conducted more than four performance reviews of plaintiff. On April 10, 1984 Ferrara wrote a memorandum to plaintiff in which he set out specific deficiencies in plaintiff's performance. On July 10, 1984, Ferrara wrote another memorandum to plaintiff, in which he set out specific deficiencies in plaintiff's performance. On that same day, plaintiff was informed that he was terminated and that Nestle's justification for his termination was plaintiff's substandard performance. D. 3(g) Statement at ¶¶ 33–39.

Plaintiff then filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") and upon administrative closing of the charge, received a notice of right to sue letter.

## LEGAL DISCUSSION

### A. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Falls Riverway Realty, Inc. v. City of Niagra Falls,* 754 F.2d 49, 57 (2d Cir.1985); *R.G. Group Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to

---

**4.** Plaintiff denies that McNiff advised him of the consequences of further noncompliance with company directives. P. Statement at ¶ 6. However, defendant has provided the Court with a copy of the memorandum which states that "[f]urther noncompliance to company directives will lead to strong disciplinary action and could be cause for your dismissal." Heylman Aff. Ex. 12. Moreover, at his deposition, plaintiff identified and conceded receiving a copy of this memorandum.

assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

In order to render summary judgment, a "court must also determine that any unresolved issues are not material to the outcome of the litigation." *Knight, supra,* 804 F.2d at 11. "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

As the Supreme Court has noted, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which were designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1) (citation omitted). The Supreme Court has recently provided guidance in applying the standard for granting a motion for summary judgment. *See Celotex, supra,* 106 S.Ct. 2548; *Anderson, supra,* 106 S.Ct. 2505; *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In *Celotex*, the Court, reversing the decision of the District Court of Columbia Circuit, held that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,'

since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing an essential element of her case with respect to which she has the burden of proof.

106 S.Ct. at 2552-53.

In *Anderson*, the Court, in considering the question of whether the clear and convincing evidence requirement under libel law must be considered by a court ruling on a motion for summary judgment, noted that "the substantive law will identify which facts are material" for purposes of summary judgment. 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted).

The Court also held in *Anderson* that:

> [S]ummary judgment will not lie if the dispute about a fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Id.* In addition, the Court noted that there "is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may not be granted." *Id.* at 2511 (citations omitted). Therefore, the standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.*

Finally, the Court here notes that:

> [T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less

to discrimination cases than to commercial or other areas of litigation. . . .

. . . . .

To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (citations omitted). Mindful of the foregoing principles, the Court next turns to the merits of plaintiff's claims.

B. *Defendant is Entitled to Summary Judgment on Plaintiff's Claim for Discriminatory Denial of Promotional Opportunities*

In *Meiri, supra*, 759 F.2d at 994, Judge Kaufmann noted that "[i]n striking contrast to the welter of decisional law spawned by those courts that have toiled in the amorphous vineyards of Title VII, the controlling legal standards appear deceptively straightforward[.]" The Supreme Court has stated that:

First, the plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); *see also United States Postal Serv. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

■ To establish a *prima facie* case of discrimination pursuant to Title VII, plain-

tiff must satisfy the test stated by the Supreme Court in *McDonnel Douglas*, and reaffirmed in *Burdine*. In order to state a *prima facie* case, the *McDonnel Douglas* test requires a plaintiff to show:

(i) that he belongs to a racial minority;

(ii) that he applied and was qualified for a job for which the employer was seeking applicants;

(iii) that, despite his qualifications, he was rejected; and

(iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnel Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. This is a flexible standard and can be adapted to the varying facts of Title VII cases. *Burdine, supra*, 450 U.S. at 253, n. 6, 101 S.Ct. at 1094, n. 6.

Because, in this action, plaintiff is claiming discrimination based on race, national origin and sex, to prevail at trial he must show: (1) that he is a member of a protected class (black); (2) that he applied for and was qualified for a position for which the employer was seeking applicants, (3) that, despite his qualifications, he was rejected and (4) that after his rejection the position remained open and thereafter was filled by whites. *Sweeney v. Research Foundation of the State University of New York*, 711 F.2d 1179, 1185 (2d Cir.1983). At this juncture, however, the question before the Court is not whether plaintiff has provided enough evidence to establish his Title VII claim. The Court only faces the question whether defendant has satisfied the burden described previously by the Court in order to be entitled to summary judgment.

■ Defendant concedes that plaintiff satisfies the first element of the *prima facie* case; he is black. As to the second element, defendant points out that plaintiff has failed to produce any specific evidence in support of his claim that he requested or applied for promotion. Plaintiff testified at his deposition that his promotion denial claims regarded the position of "distributor specialist." LaBeach Dep. at 386, 390. However, plaintiff conceded that he never

filled out a written application for the position.

A. No. I requested—the jobs—these jobs were in the wing, and I requested it through the district manager at the time.

Q. Who was who?

A. Mike Halfond.

Q. And what did Mr. Halfond say in response to your request?

A. Well, his response was that he would—he would see exactly what develops and *if* the position came up or these positions which were existing, he would see exactly what develops. But he can not give me any definite answer as to whether or not I would be able to get that position or not.

LaBeach Dep. at 386–87 (emphasis added).

The relevant period of time regarding his alleged promotion denial was identified by plaintiff as late 1983 and the first half of 1984. LaBeach Dep. at 390–91. At his deposition, when asked to identify the particular position openings and the whites who allegedly filled those positions, plaintiff stated:

A. The positions that I'm referring to is positions as distributor specialist that were available at the time.

Q. Which time?

A. During the time of—between in—the latter part of '83 and the early part of '84, where there were others who were made—where it was made possible for them to fill in to these positions as, at that time, arose, even when my position became eroded, these positions were there and being offered and individuals filled them or were brought back to fill them who actually were not, at that particular time were not, in my estimation—had the experience.

Q. Okay. I don't want to get into the merits or demerits of it. I just want to know who you're referring to and what position you're talking about.

A. Well, there may be people who were placed into different positions at that time. One—I can think of is a—I remember Smaltini. I think there was Brockhausen, there were people moved—there were more than one or two. The highlight of this was Smaltini at the time, and there there was a young lady. I don't remember her name. I think she was moved up. Brenda. I think Brenda Murray.

LaBeach Dep. at 390–91. Even construing plaintiff's testimony in the light most favorable to him, all he has shown is that he informally "applied" for any "distributor specialist" position that *might become available*. Plaintiff, however, has failed to show that there was an opening in a distributor specialist position during the time of his employment with Nestle, and thus was "rejected" for such a position.

In addition, with respect to the fourth, and final, element of the *prima facie* case, plaintiff has failed to provide evidence, other than his own conclusory allegations[5] to demonstrate that during the alleged pendency of his request for promotion, other Nestle employees of his qualifications, but white, were promoted. In the deposition testimony reproduced above, plaintiff identified three whites who allegedly filled the position for which he allegedly applied: Brenda Murray, Frank Smaltini and James Brochhausen. Defendant has produced evidence indicating that Ms. Murray was never promoted. Instead she went on a leave of absence while still a retail sales representative in May, 1984. Ultimately, she voluntarily terminated her employment with Nestles in September, 1984. Affidavit of Joseph P. Convery, sworn to on April 17, 1987 at ¶ 6. Mr. Smaltini did in fact receive a promotion. However, he was not promoted to the position of "distributor specialist" but rather to a unit manager. The Court also notes that this promotion occurred in

---

**5.** Plaintiff states that "upon knowledge, information and belief, white employees were promoted while plaintiff was still employed by the defendant corporation, although the records of the corporation reflect otherwise." Plaintiff's Memorandum of Law ("P. Memo.") at 14. (Plaintiff's memorandum is not paginated. For the purposes of this opinion, the Court will refer to plaintiff's Table of Contents as pages i–ii, and to the text of the argument as pages 1–27.) As described earlier, such a statement fails to satisfy the "specific fact" standard necessary to successfully oppose a motion for summary judgment. *See Celotex, supra,* 106 S.Ct. at 2553.

October, 1984, after plaintiff's employment was terminated. *Id.* at ¶ 4. Although Mr. Brochhausen did receive a promotion to the position of distributor specialist, the promotion did not occur until February 1, 1985, six months after plaintiff's discharge from Nestle's employ. *Id.* at ¶ 5. Therefore, the appointment of these individuals do not support a *prima facie* case of promotion discrimination in the time period prior to plaintiff's termination.

C. *Nestle Did Not Engage In Systemic Denial of Promotional Opportunities to Blacks and other Minorities nor Did Nestles Maintain a Facially Neutral Program which had Disparate Impact upon Blacks or Minorities*

■ Plaintiff also argues, for the first time, in his memorandum of law, that Nestle engaged in a systemic denial of promotional opportunities to blacks and other minorities. Assuming that this claim is not barred by plaintiff's failure to include it in his EEOC charge and Complaint herein, it still fails to ease plaintiff's burden with respect to establishing a *prima facie* case of discrimination. Again, plaintiff, when alleging disparate treatment prior to October, 1983, has failed to name any particular position for which he applied and was qualified, for which Nestle was seeking applicants, and which remained open and was filled by whites after plaintiff's rejection. *Sweeney, supra,* 711 F.2d at 1185. Furthermore, he has not provided any evidence that he was denied promotional opportunities through discrimination.

■ Although it is certainly far from clear from plaintiff's papers, it also seems that he is raising another new claim, that Nestle maintains a facially neutral policy which has a disparate impact on minorities. Again, plaintiff bears the burden of showing that defendant's policies and practices have a substantially disproportionate exclusionary impact on blacks, in order to prove his *prima facie* case. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct.

2362, 2375, 45 L.Ed.2d 280 (1975); B. Schlei and P. Grossman, *Employment Discrimination Law* (2d ed. 1983) at 1326. "Plaintiffs who alleged a forbidden disparate impact are required to prove a causal connection between the challenged selection criterion and the disparate impact itself, while employers can defend use of the challenged selection criterion on grounds of 'a legitimate business reasons....'" *Zahorik v. Cornell University,* 729 F.2d 85, 95 (2d Cir.1984) (quoting *Pouncy v. Prudential Insurance Co. of America,* 668 F.2d 795, 800 (5th Cir.1982)). In evaluating such a claim, "courts have insisted upon clear and convincing evidence of a substantially discriminatory effect before applying the disparate impact theory." *Zahorik, supra,* 729 F.2d at 96 (citing *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 342 n. 23, 97 S.Ct. 1843, 1858 n. 23, 52 L.Ed.2d 396 (1984); *Griggs v. Duke Power Company,* 401 U.S. 424, 430 n. 6, 91 S.Ct. 849, 853 n. 6, 28 L.Ed.2d 158 (1971); *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007, 1010 (2d Cir.1980)).

■ In the instant action, plaintiff has not provided any statistical data showing that defendant's promotion policies have a disparate impact. Plaintiff may not avoid the requirement of providing evidence of systematic exclusion through the device of belatedly raising new claims sustained only by speculation and conclusory allegations. Therefore, to the extent plaintiff has raised a claim of disparate impact, it is hereby dismissed.

D. *Plaintiff's Wage Discrimination Claim, Demotion Claim and any other Claims Plaintiff has made with respect to Alleged Discriminatory Acts which have occurred prior to October 3, 1983 are Time Barred*

Under subsection 706(e) of Title VII, 42 U.S.C. § 2000e–5, a claimant in a deferral state such as New York has 300 days from the act complained of within which to file an administrative charge with the EEOC.[6]

---

**6. (e) Time for filing charges.** A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment

"A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Such an act "may constitute relevant backround evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequence." *Id.*

The Court cannot here determine the exact date on which plaintiff initially brought a claim of discrimination to the EEOC. Although plaintiff's signature on his discrimination charge is dated July 30, 1984 the EEOC did not acknowledge receipt until September 19, 1984, affidavit of Robert Duston, Esq., sworn to on December 1, 1986 ("Duston Aff.") at Exs. 1 and 2, and did not issue a notice of charge of discrimination to Nestle until September 21, 1984. *Id.* at Ex. 3. Plaintiff's claim, however, could not be formally filed with the EEOC under Title VII when first brought "because, in a 'deferral' state, a prerequisite to the filing of an EEOC complaint is pendency of the charges in the relevant 'State or local authority' [for at least 60 days]." *Alveari v. American International Group,* 590 F.Supp. 228, 230 n. 9 (S.D.N.Y.1984).

The EEOC stated to plaintiff, in a letter dated September 19, 1984, that the charge was sent by the EEOC to the New York State Division of Human Rights, which waived the 60–day deferral period, therefore placing the claim under the EEOC's jurisdiction as of the time of that waiver. Duston Aff. at Ex. 2. Therefore, it would be reasonable to treat plaintiff's charge as being filed effective September 19, 1984, thus making the date of accrual November 23, 1983. However, the Court, will calculate the date of accrual more liberally. The Court will assume that plaintiff's charge was presented to the EEOC on July 30 and that there was an instantaneous waiver of the 60–day period, therefore, the accrual date is October 3, 1983, instead of November 23, 1983.

The Complaint and the undisputed evidence presented by Nestle indicate that the following allegations occurred prior to October 3, 1983, and thus would be time barred: any initial wage discrimination occurring when plaintiff was hired in 1978, all allegations of racial harassment or other discriminatory acts that took place during the first eight months of employment and training, all alleged acts of disparate treatment in 1980 when plaintiff was under the supervision of Mike Kohut, all allegedly discriminating harassment and disparate evaluation by Theroux, McNiff and others during the first nine months of 1983, and plaintiff's demotion in 1983 to the position of retail sales representative during defendant's reorganization.

Plaintiff does not dispute this Court's interpretation of § 2000e–5(e) or of the timing of the allegations contained in the Complaint. Instead plaintiff first argues that his claims are not time barred under the theories of waiver, estoppel, and equitable tolling. P. Memo. at 5–6. More significantly, plaintiff contends that his claims are not time barred because the alleged harassment, denial of promotional opportunities and subsequent termination "constitute[ ] a continuing violation of plaintiff's employment rights and such violations are encompassed within the EEOC charge filed by plaintiff." P. Memo at 3. Consequently, plaintiff asserts that the Court is not required to use October 3, 1983 as the date the federal statutory claims arose.

practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

1. *Plaintiff Fails to Provide Facts Demonstrating that He is Entitled to Waiver, Estoppel or Equitable Tolling of the 300 Day Limit*

Plaintiff relies on *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) to support his argument that the filing of a timely charge of discrimination with the EEOC is subject to waiver, estoppel, and equitable tolling. P. Memo. at 5–6. However, plaintiff fails completely to provide any facts or theories why Nestle has waived or is estopped from asserting the defense of statute of limitations.

■ As a threshold matter, the Court notes that Nestle has never waived its right to raise the defense of statute of limitations defense. *See* Defendants' Answer, Affirmative Defense No. 7.[7] Moreover, plaintiff has failed to contend that he was "actively misled by [Nestle], ... was prevented in some extraordinary way from exercising his rights, or ... asserted his rights in the wrong forum, in which event tolling of the time bar might be permitted as a matter of fairness." *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied, —— U.S. ——*, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (citation omitted). Finally, plaintiff has "provided no evidence of deliberate misconduct or bad faith by [Nestle] sufficient to invoke equitable estoppel." *O'Malley v. GTE Service Corp.*, 758 F.2d 818, 822 (2d Cir.1985). Therefore, the Court does not find that defendant has waived or is equitably estopped from successfully raising the statute of limitations defense.

■ In addition, plaintiff claims that Nestle's decision to demote and subsequently terminate him were subject to reconsideration, and thus not final. P. Memo. at 13–14 (citing *Weise v. Syracuse University*, 522 F.2d 397 (2d Cir.1975); *Cap v. Lehigh University*, 433 F.Supp. 1275 (E.D.Pa.1977)). However, the Second

Circuit has stated clearly that "the mere possibility that the decision might be reversed [is] not enough to label it advisory or ineffective for time bar purposes." *Miller, supra,* 755 F.2d at 24 (citing *Coke v. General Adjustment Bureau, Inc.*, 616 F.2d 785, 788 (5th Cir.1980), *vacated on other grounds and reh'g on other grounds*, 640 F.2d 584, 586 & n. 2 (5th Cir.1981)); *see also Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) (discriminatory act occurred at the time the tenure decision was made and communicated).[8] Therefore, the Court must reject this argument as well.

2. *Plaintiff has Failed to Establish "Compelling Circumstances" for Application of the Continuing Violation Doctrine*

As discussed previously, plaintiff also argues that his claims are not time barred because of the "continuing violation" doctrine. The policy reason underlying this doctrine is "to provide a remedy for past actions which operate to discriminate against the complainant at the present time." *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir.1975). Therefore, in order to demonstrate a continuing violation, a plaintiff must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (1979)).

■ In determining whether plaintiff has satisfied the requirements of the "continuing violation" doctrine, two principles must be applied. First, plaintiff must establish a present and ongoing violation of Title VII, it is not sufficient to show a present effect of past discrimination. *Un-*

---

**7.** "Plaintiff's claims are barred by the applicable state and federal statutes of limitation, the doctrine of laches, and failure to comply with administrative requirements."

**8.** As defendant correctly notes, *see* Defendant's Reply Memorandum ("D. Reply") at 9 n. 5, the "cases cited by plaintiff on this point were all decided before the U.S. Supreme Court's decision in *Ricks*."

*ited Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Second, plaintiff may not evade Title VII's stringent time limits merely by characterizing a completed act of discrimination as a "continuing violation." *Ricks, supra,* 449 U.S. at 257, 101 S.Ct. at 503. "Conclusory allegations of discrimination are insufficient to satisfy the requirements of Fed.R.Civ.P. 56(e) that the party opposing summary judgment must set forth specific facts demonstrating that a genuine issue of material fact exists." *McPartland v. American Broadcasting Companies, Inc.,* 623 F.Supp. 1334, 1339 (S.D.N.Y.1985) (citations omitted) Ultimately, the determination as to whether or not a continuing violation exists must be made on a case-by-case basis. *Ricks, supra,* 449 U.S. at 258 n. 9, 101 S.Ct. at 504 n. 9. "While 'compelling circumstances' may be sufficient to warrant a finding of 'continuing' discrimination, *Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249, 1253 (8th Cir.1972), such compelling circumstances do not exist in this case." *McPartland, supra,* 623 F.Supp. at 1339 (footnote omitted).

 Plaintiff first argues that because of his demotion and loss of income, continuing violations still exist. P. Memo at 3. However, as defendant correctly points out, the claim that plaintiff "suffered a loss of income merely describes the *effect* of his demotion—which is a discrete act outside the 300 day limitation period." D. Reply at 10 (emphasis in original). As the Court has already stated, present effects of past discrimination do not toll the statute of limitations. *See Evans, supra,* 431 U.S. at 558, 97 S.Ct. at 1889; *see also Valentino, supra,* 674 F.2d at 65. The Court directs its attention only to the time the alleged discriminatory acts occurred, not when the results of those acts become most serious. *See Ricks, supra,* 449 U.S. at 258, 101 S.Ct. at 504; *see also Gilliard v. New York Public Library System,* 597 F.Supp. 1069, 1077 (S.D.N.Y.1974) (plaintiff's allegations that his salary remains at lower level and career plans impaired do not represent anything other than mere effects of prior violation).

Plaintiff also argues that Nestle systematically practices discrimination and maintains a discriminatory promotion system. P. Memo. at 2, 9–10. Plaintiff, citing *Griggs, supra,* 401 U.S. 424, 91 S.Ct. 849, states that Nestle maintained facially neutral policies which had an adverse impact upon a protected class. P. Memo. at 7. Furthermore, plaintiff claims that Nestle's reorganization had a disparate impact on blacks and other minorities. P. Memo. at 12.

 Although the Court agrees with plaintiff that the maintenance of a discriminatory system may be a continuing violation under certain circumstances, plaintiff has failed to provide any facts to satisfy his burden of showing that he can establish a *prima facie* case of policies or disparate impact. Plaintiff has failed to identify any particular policy that is claimed to have operated in a discriminatory fashion. Plaintiff has also failed to introduce any statistical data or affidavits showing a widespread "pattern and practice" of discrimination. Instead plaintiff broadly asserts that he has data indicating that Nestle's reorganization had a disparate impact on minorities. This assertion is in direct conflict with his failure to share any of this information with the Court, despite being faced with a summary judgment motion. Moreover, plaintiff's assertion is even more surprising in light of his admission that Nestle's reorganization was for legitimate reasons. *See* D. 3(g) Statement at ¶¶ 24–26; P. Statement at ¶¶ 7, 9. In fact, at his deposition, plaintiff conceded that he had no knowledge of what happened throughout Nestle during the reorganization, nor did he know if employees were terminated due to the reorganization and he did not challenge the argument that the reorganization was for legitimate business reasons. LaBeach Dep. at 275–77.

In sum, upon the record before it, the Court has no choice but to agree with defendant that:

> In response to a motion for summary judgment, [plaintiff] is required to come forward with some proof that there is a genuine issue of material fact. There has been no evidence presented of sys-

temic discrimination or disparate impact. [Plaintiff's] allegations and assertions are insufficient to demonstrate a genuine issue of material fact. Since there is no issue of systemic discrimination to be tried, there is no continuing violation. D. Reply at 12.

 In addition, plaintiff argues that a demotion is a "continuing" act. However, the case law in this area indicates that a demotion, like a termination, is a discrete act which is consummated at the time it is made, and is not of a continuing nature. See *McPartland*, 623 F.Supp. at 1338; *Gilliard*, 597 F.Supp. at 1077; *Malarkey v. Texaco, Inc.*, 559 F.Supp. 117, 121 (S.D.N.Y.1982), *aff'd*, 704 F.2d 674 (2d Cir. 1983). Furthermore, plaintiff seeks to persuade the Court that his claims of wage discrimination amounts to continuing violations, and are therefore not untimely. P. Memo. at 11–12. Again, with respect to this claim, plaintiff has failed to provide the Court with any facts to establish a *prima facie* case of wage discrimination in any job position he has held. Plaintiff has merely alleged in a conclusory fashion that at the time he was hired his salary was lower than that of the whites hired for the same position. Moreover, even if the Court could find that there was discrimination in wages paid plaintiff at the time he was hired, plaintiff also fails to produce any facts that suggest that he suffered wage discrimination after he was demoted. Therefore, it ineluctably follows, as suggested by defendant, that:

> [Plaintiff] has never alleged or presented any evidence that his salary as a Retail Sales Representative was lower than the salaries of comparable white Retail Sales Representatives. Any wage disparity ended at the time of his demotion in August, 1983. Absent proof of wage disparity after October 3, 1983, his claim is time-barred.

D. Reply at 13.[9]

### CONCLUSION

For the aforementioned reasons, the Court grants Nestle's motion for partial summary judgment. The parties are directed to contact the Court for the purpose of scheduling a pretrial conference in order to discuss the remaining issues to be tried in this case, namely, plaintiff's termination and his claims of disparate evaluation and treatment by his last supervisor Dominick Ferrara.

SO ORDERED.

---

**9.** Plaintiff also tries to argue he was *generally* subjected to continuous discrimination and therefore none of his claims are time barred. Plaintiff cites no cases to support this novel legal argument. For the reasons stated herein the Court declines to accept this argument.