Marcel BEMBRY, Plaintiff,

v.

Michael DARROW;  John Mazurowski;
Philip Scott and Mohawk Valley
Community College, Defendants,

No. 99–CV–0017.

United States District Court,
N.D. New York.

May 26, 2000.

Leon R. Koziol, Utica, NY, for Plaintiff.

Stephen Lance Cimino, Office of Stephen Lance Cimino, Syracuse, NY, for Defendants Michael H. Darrow, Phillip Scott and John Mazurowski.

Gorman, Waszkiewicz, Gorman and Schmitt, Attorney for Defendants, Michael H. Darrow, Phillip Scott, John Mazurowski and Mohawk Valley Community College, Utica, NY, Darryl B. Rahn, of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

Plaintiff, an African American, began working for defendant Mohawk Valley CommunityCollege ("MVCC") on January 27, 1992, as a Building Maintenance Helper. In October 1993, plaintiff returned from a year's workers' compensation leave with a 40% right shoulder disability which caused him to be placed on permanent light-duty status during his employment with MVCC. In order to accommodate plaintiff's disability, light-duty assignments of other Building Maintenance Helpers were assigned to plaintiff, so the others were available to do the heavy-duty work plaintiff could not carry out.

Plaintiff was then assigned sole responsibility to maintain to a new building. Shortly thereafter, it was realized that plaintiff's disability could prohibit him from undertaking any heavy-work assignments required for proper building maintenance. Plaintiff was then transferred to a building with other maintenance staff to accommodate his light-duty status.

During the time period alleged in the complaint defendant MVCC employed defendants Philip Scott as a supervisor of building services, Michael Darrow as a maintenance worker and supervisor of five or six employees, including plaintiff, and John Mazurowski as working foreman in the maintenance department of MVCC, and supervisor of building maintenance workers and building maintenance helpers.

On January 6, 1995, plaintiff filed a complaint under MVCC's internal grievance procedure alleging various incidents of racial discrimination. Pursuant to MVCC internal policy, Jerome M. Brown, Dean of Human Resources and affirmative action officer for MVCC, investigated the grievance. The complaint alleged that defendants Scott, Mazurowski and Darrow discriminated against him because of his race and religion. Dean Brown's investigation of the complaint's issues included interviewing the named parties and various other members of the MVCC staff. His report, dated July 18, 1995, found that there existed sufficient evidence to support the allegations of discrimination based upon race, but not upon religion.

Plaintiff appealed this decision to the Ad Hoc Appeals Committee that decided that enough evidence existed to support the allegations based upon plaintiff's color, and recommended disciplinary action be taken against defendants Scott, Mazurowski and Darrow. A further appeal took place on August 7–8, 1996 where thirteen witnesses including plaintiff and the three individual defendants testified. Hearing Officer Dr. Linda M. Spink reported that there was evidence of some level of harassment, but concluded that it was unclear whether it related to plaintiff's race or light-duty status. The report agreed that disciplinary action be taken against the three individual defendants as recommended in the Ad Hoc Committee's report.

The MVCC internal discrimination grievance procedure considered assorted incidents of alleged discrimination by defendants which took place before the filing of his January 6, 1995 complaint. The grievances purported a derogatory racist comment was made by defendant Scott shortly after plaintiff was hired; discrimination in when and where work breaks were allowed; letters of commendation that were withheld from plaintiff; excessive surveillance of plaintiff in the workplace; harassment by assigning heavy-duty chores to plaintiff when his physical disability required light-duty chores; supervisors frequently re-assigning plaintiff to other buildings; and encouragement by supervisors to other staff to file complaints about plaintiff with MVCC Vice President Jerry Alverman.

On August 13, 1996 plaintiff filed a complaint against MVCC with the New York State Division of Human Rights ("NYSDHR"). MVCC filed a response to the complaint detailing the course of MVCC's internal grievance procedure and how plaintiff's various claims of racial discrimination were addressed following plaintiff's complaint of January 6, 1995. Plaintiff's NYSDHR complaint referred to one additional allegation of harassment-discrimination complaint which took place on January 30, 1996. This latter incident was not covered in the MVCC reply.

According to plaintiff, the January 30, 1996 alleged discrimination occurred when he was participating in a task involving the removal of furniture from a room in the Academic Building to permit the carpets to be shampooed, during which plaintiff was injured. Following plaintiff's injury on January 30, 1996, he stayed unemployed on workers' compensation leave until December 1996. Soon thereafter he was certified by the New York Education Department/VESID as disabled under Civil Service Law § 55–a due to his physical restrictions.

There were no adverse employment actions such as demotions, salary reductions, warnings, reprimands or suspensions taken by MVCC against plaintiff. In April 1997, plaintiff was promoted from Building Maintenance Helper to Senior Clerk, a position requiring principally desk work.

On September 29, 1998, the NYSDHR issued its "DETERMINATION AND ORDER AFTER INVESTIGATION," in which it found that there was "NO PROBABLE CAUSE" to support a charge of unlawful discrimination. On October 22, 1998, the Equal Employment Opportunity Commission ("EEOC") adopted the finding of the NYSDHR, closed its file on plaintiff's charge and issued a right to sue notice.

Plaintiff instituted the instant action in federal court by filing a summons and complaint on January 6, 1999. The complaint alleges violations of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981 and § 1983, and the New York Human Rights Law (§ 296 Executive Law). The plaintiff seeks monetary and punitive damages as well as costs and attorneys' fees.

## DISCUSSION

Currently before the court is defendants' motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has interposed opposition to this motion.

Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary Judgment is properly regarded ... as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265(1986)(quoting Fed.R.Civ.P. 1). In determining whether there is a genuine issue of fact a court must resolve all ambiguities, and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). An issue of credibility is insufficient to preclude to preclude the granting of a motion for summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issues of fact must be supported by evidence that "would allow a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude any entry of summary judgment. *Anderson,* 477 U.S.

at 247, 106 S.Ct. at 2509, 106 S.Ct. 2505. In Title VII cases, conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). "[S]ummary judgment under Rule 56 is still appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case." *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 61 (2d Cir.1998). Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation and plaintiff must still offer concrete evidence from which a reasonable juror could return a verdict in that party's favor. *Id.* at 62.

■ As to the Title VII claims asserted against the individual supervisory defendants, the Second Circuit has held "that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995), abrogated on other grounds *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). *"Tomka* and the language of Title VII compel a holding that only employer-entities have liability under Title VII." *Smith v. New York City Board of Education,* 2000 WL 64873 (S.D.N.Y. January 25, 2000)(quoting, *McBride v. Routh,* 51 F.Supp.2d 153, 157 (D.Conn.1999)). Therefore, claims pursuant to Title VII against individual defendants Darrow, Mazurowski and Scott must be dismissed, leaving employer MVCC as the sole Title VII defendant in this action.

■ Determination of employment discrimination claims made pursuant to administrative proceedings or contractual grievance processes are not given any preclusive effect, under doctrines like res judicata, in future suits to redress rights under Title VII, *Stafford v. Muscogee County Board of Education,* 688 F.2d 1383, 1392 (11th Cir.1982). The remedies in an administrative action or under a grievance

procedure are different than those available under Title VII or 42 U.S.C. § 1981. *Id.* at 1392, and, in any event, the federal courts are intended to be the final arbiter of rights under Title VII, not administrative agencies or tribunals. *Hutchings v. United States Industries, Inc.,* 428 F.2d 303, 313–314 (5th Cir.1970).

Title VII requires a claimant to file a charge of discrimination within 180 days of the alleged unlawful employment action, or if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action. This statutory constraint is similar to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

Plaintiff filed his claim with the NYSDHR on August 13, 1996, therefore any Title VII claims which occurred on or before October 19, 1995 were not filed within the mandatory 300 day statutory restriction. This means that the only timely filed claim in this action would be plaintiff's claim that his supervisor ordered him to perform an assignment that normally would require the work of two people, and in attempting to carry out the assignment, he was physically injured.

■ Plaintiff, however, argues that the discrimination against him falls within the "continuing violation" exception to the 300 day rule, because the hostile work environment he endured satisfied the conditions of a continuing violation. *West v. Philadelphia Electric Co.,* 45 F.3d 744 (3rd Cir. 1995); *LaBeach v. Nestle Co.,* 658 F.Supp. 676, 687 (S.D.N.Y.1987). If a continuing violation is shown, the plaintiff is entitled to have the court consider all pertinent actions allegedly undertaken pursuant to the employers discriminatory policy or practice, including those that would be otherwise time barred.

■ The continuing violation exception is applicable when there is evidence of

a continuing violation or a discriminatory policy or practice, such as the use of discriminatory seniority lists or employment tests, *Lambert v. Genesee Hospital,* 10 F.3d 46 (2d Cir.), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994), and it does not address "multiple incidents of discrimination, even similar ones that are not the result of discriminatory policy or mechanism." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). "Mere incantation of claims of hostile work environment will not be enough to invoke the continuing violation doctrine." *Brown v. Middaugh,* 41 F.Supp.2d 172, 182 (N.D.N.Y.1999) Moreover, "courts of this Circuit consistently have looked unfavorably on continuing violation arguments." *Curtis v. Airborne Freight Corp.,* 87 F.Supp.2d 234, 244 (S.D.N.Y. 2000), *Rucci v. Thoubboron,* 68 F.Supp.2d 311, 320 (S.D.N.Y.1999).

■ A continuing violation may be found in the absence of a formal discriminatory mechanism, however, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). "By its nature, a claim of 'hostile work environment' discrimination turns on the existence of a continuing violation." *Engelmann v. National Broadcasting Company,* 1996 WL 76107 at *15 (S.D.N.Y. February 22, 1996)(quoting *Waltman v. International Paper Co.,* 875 F.2d 468, 476 (5th Cir. 1989)).

■ To succeed on a hostile work environment claim, plaintiff must show: "(1) that his/her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive enough to alter the conditions of his/her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer." *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 249 (2d Cir. 1995). Elements to be weighed when de-

ciding if an environment is hostile or abusive include "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). "Plaintiff must prove more than a few isolated instances of racial enmity. Casual comments, or accidental sporadic conversation will not trigger equitable relief pursuant to the statute." *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986).

Although there is no rule that an appropriately alleged hostile work environment claim also comprises a continuing violation, the court will examine plaintiff's allegations to determine if they contain elements of a hostile work environment and, in turn, a continuing violation. *West v. Philadelphia Electric Co.* 45 F.3d at 744.

In his complaint, plaintiff asserts that he was discriminated against while employed by defendant MVCC during the period January 1992 through January 30, 1996. He alleges: (1) that shortly after he was hired, defendant Scott remarked that he had problems with prior black employees and hoped plaintiff would not continue this trend; (2) that he was over burdened by double assignments rarely received by white employees; (3) he was routinely transferred to new and unfamiliar locations in his assignments in an effort to cause performance problems unlike white workers who received favorable unvarying work assignments in familiar locations; (4) defendants attempted to exert influence upon white workers to file false work performance statements against plaintiff in an effort to have him dismissed for cause; (5) white employees received preferential opportunities for advancement over plaintiff; and (6) he was retaliated against for complaining to the EEOC.

■ Although plaintiff claims that was subjected to this conduct during this

time period, he provides no other verified dates or times of their occurrences. The alleged discriminatory harassment here was not enough to establish a hostile work environment. Infrequent remarks or episodes of harassment will not warrant relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can be termed pervasive, *Tomka v. Seiler Corp.*, 66 F.3d at 1305. The incidents here were episodic, not continuous enough or concerted to be pervasive, and did not "sufficiently affect plaintiff's conditions of employment to implicate Title VII." *Harris v. Forklift Systems*, 510 U.S. at 19, 114 S.Ct. at 367–68.

An examination of the record discloses that other than the alleged inappropriate statement defendant Scott made to plaintiff in February 1992, plaintiff alleges no other verified dates and places where such comments were made to him. In order to accommodate plaintiff's disability, he was asked to perform certain light-duty assignments assigned to other Building Maintenance Helpers, which he could do, so the other could perform heavy work, which he could not do. Transfers between buildings were also undertaken to accommodate plaintiff by placing him in work areas where he could carry out his light-duty maintenance assignments while other workers were nearby to assist him if confronted with a heavy duty assignment. There is no showing that any false work performance statements were filed against plaintiff. Indeed, the three work evaluation reports in the record show that his work was satisfactory.

Plaintiff further alleges that white employees received preferential opportunities for advancement. "Multiple failures to promote are usually viewed as discrete incidents of discrimination that do not constitute a continuing violation." *Mareno v. Madison Square Garden*, 1999 WL 777952, a *5, 1999 U.S. Dist. LEXIS 15265, at *14 (S.D.N.Y. Sept. 29, 1995). This is because in contrast to a claim of harassment or hostile work environment, each discriminatory failure to hire or promote is a completed act for which plaintiff can sue at the time. *Wang v. New York City Department of Finance*, 1999 WL 5295590, at *10, 1999 U.S. Dist. LEXIS 11256 at *35 (E.D.N.Y. July 21, 1999).

The only specific verified incident of this type of discriminatory conduct alleged by plaintiff took place in April 1997. At that time, plaintiff did receive a promotion to Senior Clerk but was only elevated from Grade 11 to Grade 12 employment level while Nancy Rooney, the white employee he replaced, was a Grade 21. It seems that plaintiff's contentions here are contradicted by the affidavit of Jerome M. Brown, Dean of Human Resources and Affirmative Action Officer for MVCC, which declares that plaintiff did not replace Nancy Rooney who was an Administrative Assistant with a Grade 19 employment level. As Administrative Assistant she had the responsibility of developing the department budget, monitored expenditures, tracked spending trends and made projections, was responsible for department purchasing functions, maintained an inventory of physical space for two campuses, in addition to typing and clerical duties. While some of plaintiff's duties were those performed by Ms. Rooney, Mr. Bembry's duties did not encompass those of Administrative Assistant. Mr. Bembry does work with data entry and budget items, but he is not responsible for the preparation of the budget or analysis of spending, or projections. He has no responsibility for purchasing.

Assessing plaintiff's claim here in light of the above, it is apparent that plaintiff has failed to establish even a prima facie case of employment promotion discrimination. To make out a *prima facie* case of employment discrimination in a Title VII action, a plaintiff must show (1) that he belongs to a protected class; (2) qualification for position for which employer sought applicants; (3) he was denied the position, and (4) that the denial occurred under

circumstances giving rise to a reasonable inference of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *McLee v. Chrysler Corp.* 109 F.3d 130, 134 (2d Cir.1997). The same analysis applies to plaintiff's discrimination claim under 42 § 1981. See *Hargett v. National Westminster Bank USA,* 78 F.3d 836, 838 (2d Cir.), *cert. denied,* 519 U.S. 824, 117 S.Ct. 84, 136 L.Ed.2d 41 (1996). Under § 1981, plaintiff must establish that the protected status at issue is race and that the alleged discrimination involves one or more activities set forth in the statute. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Once the plaintiff has validated a *prima facie* case of discrimination, the defendant must produce evidence that the adverse employment action was taken for nondiscriminatory reasons. If the defendant carries this burden of production, the plaintiff is given the opportunity to demonstrate that the proffered reasons are pretextual. *McDonnell,* 411 U.S. at 802–03, 93 S.Ct. at 1824. Although plaintiff satisfies the first of the *McDonnell* elements, he is unable to even carry out his very limited charge of providing the minimal evidence needed to shift the burden to the defendants to explain the actions complained of. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993).

Plaintiff has not shown a hostile work environment or that a continuing violation theory should be applied to alleged discriminatory acts which took place outside of the limitation period. While plaintiff may have found his supervisor's conduct distressing, their conduct does not separately or together create a hostile work environment and cannot form the basis of a Title VII claim. *Picotte v. Community Child Care Center of Third Ward, Inc.,* 901 F.Supp. 588, 594 (W.D.N.Y.1995). Additionally, he has not produced any policy documents or statements of a person involved in the decision making process that reflected a discriminatory intent. *Fields v. New York State OMRRD,* 115 F.3d 116, 124 (2d Cir.1997). While "compelling circumstances may be sufficient to warrant a finding of a continuing violation, *Richard v. McDonnell Douglas Corp.,* 469 F.2d 1249, 1253 (2d Cir.1972), they do not exist in this case."

Based upon these findings, it is evident that plaintiff's sixth claim is the only alleged incident that took place within the limitation period.. This claim alleges that plaintiff was retaliated against for filing administrative grievances and a complaint with the EEOC. He seeks relief under Title VII, 42 U.S.C. § 1981 and § 1983 and the New York State Human Rights Law (Executive Law § 296). Since New York courts require the same standard of proof under the Human Rights Law as those brought under Title VII, the court will address plaintiff's federal and state claims simultaneously. See *Miller Brewing Company v. State Division of Human Rights,* 66 N.Y.2d 937, 498 N.Y.S.2d 745, 489 N.E.2d 745 (1985); *Van Zant v. KLM Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996). Plaintiff claims that the retaliation took place on January 30, 1996 when he was compelled to undertake a heavy-duty job assignment which caused an injury to his left arm.

Retaliation claims are evaluated under the burden shifting rules established by the Supreme Court in *McDonnell Douglas v. Green, supra.* A *prima facie* case for retaliation under Title VII requires the plaintiff to show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; [3] a causal connection between the protected activity and the adverse employment action. *Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 64 (2d Cir.1992). Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the

plaintiff bears the burden of showing that the defendant's reasons are a pretext for the true discriminatory motive. *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991). There is no disagreement that plaintiff engaged in a protected activity when he filed his administrative grievances and EEOC complaint, *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir.1998). Instead, the controversy focuses on whether plaintiff experienced any disadvantaging employment actions and, if so, what causal connection, if any exists between those actions and his protected activities.

■ The defendant has provided a legitimate explanation for the events that took place. Plaintiff's entire cleaning crew had been assigned to remove the furniture from a room in the Academic Building to permit the carpets to be shampooed. No specific removal orders were given. If anyone asked plaintiff to move a piece of furniture that was beyond his limitations he could have refused to do so without fear of penalty, or, if he so chose, could have asked for assistance. The record does not disclose that he did either. The affidavit of crew supervisor, defendant Darrow, states that the assignment was made to the entire cleaning crew due to normal work necessity, that he did not direct plaintiff to move heavy furniture because he was well aware of plaintiff's light-duty status. Furthermore, Dean Brown specifically stated in his affidavit that he had advised plaintiff on many occasions prior to January 1996, that if he was assigned work beyond his physical limitations, that he was not to do the work and would not be reprimanded for refusing.

■ Faced with defendants' explanation, plaintiff must produce sufficient evidence to support a finding that it is a pretext. Plaintiff has put forth nothing more than conclusory allegations to suggest a causal relationship between his filing grievances and complaints and his being assigned as part of the furniture removal crew on January 30, 1996. As to the element of adverse employment action, plaintiff was not terminated nor subjected to any adverse employment action cognizable under the relevant statutes. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). His on the job injury was covered by workers' compensation insurance and, after his recovery, he returned to work at MVCC in December 1996. In April 1997, plaintiff was promoted from Building Maintenance Helper to the clerical position of Senior Clerk.

Liability under Title VII, § 1981, and the New York Human Rights Law is established by reference to the same legal standard and modicum of proof, and where a Title VII claim based upon retaliation fails, the other statutes must fail with it.

Plaintiff's § 1983 claim is also deficient because initially it fails to allege that any of the individual defendants were acting under color of state law and thereby it failed to state a proper claim against them under § 1983. The claim against MVCC is deficient because it does not plead or attempt to prove that there was a discriminatory policy at MVCC upon which municipality liability could be based.

■ In order to attach § 1983 to a municipality, there must be proof of a municipal policy or custom that contravened plaintiff's constitutional rights. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff makes no assertions or showing of an unconstitutional policy to support the § 1983 claim against the college. Moreover, the record shows that MVCC's policy took discrimination claims seriously. Plaintiff's municipal § 1983 claim is without merit.

Accordingly, Defendants' summary judgment motion is **GRANTED** and the complaint is **DISMISSED** in its entirety. **IT IS SO ORDERED**