Yvonne MUSSINGTON, individually and on behalf of her son, Jonathan Jacobs; Rosemary Johnson, individually and on behalf of her children, Edward Cuffee, Jr., Tony Johnson, Roger Cuffee, Shamaekia Cuffee, Jennifer Cuffee, Jessica Cuffee, Kevin Cuffee, and Veronica Johnson; Church of the Intercession; Iglesia Episcopal De Santa Maria; Religious Committee on the New York City Health Crisis, Inc.; Riverside Church Office of Social Justice; St. Mary's Episcopal Church Manhattan; and Upper Manhattan Anglican/Episcopal Clergy Association, Plaintiffs,

v.

ST. LUKE'S–ROOSEVELT HOSPITAL CENTER; New York State Department of Health; and Mark R. Chassin, Commissioner of Health, in his official capacity, Defendants.

No. 92 Civ. 8961 (JSM).

United States District Court,
S.D. New York.

June 11, 1993.

Maya Wiley, N.A.A.C.P. Legal Defense and Educ. Fund, New York City, for plaintiffs.

Charles Sims, Proskauer Rose Goetz & Mendelsohn, New York City for St. Luke's–Roosevelt Hosp. Center.

Brian McGovern, Asst. Atty. Gen., New York City, for State of N.Y. defendants.

## OPINION AND ORDER

MARTIN, District Judge:

### Background

Defendant St. Luke's–Roosevelt Hospital Center ("SLRHC") is a hospital which is actually comprised of two separate facilities: St. Luke's, located in Manhattan at Amsterdam Avenue and 113th Street, and Roosevelt, located in Manhattan at Amsterdam Avenue and 59th Street. Originally completely distinct hospitals, the two merged in 1979 for financial reasons and now practically function as one hospital serving an area from West 34th Street to West 142nd Street in Manhattan.

As a result of further financial difficulties, SLRHC has planned a number of long range changes, some of which involve consolidation of particular services at either one or the other facility. Changes in hospital services which require construction require the approval of the Commissioner of the Department of Health (both the Commissioner and the Department have been named as defendants and are collectively referred to herein as "DOH"), and such approval was given on March 4, 1987 and modified on July 11, 1990.

Plaintiffs' complaint alleges that SLRHC plans and DOH approved SLRHC's intentions: (1) To consolidate its obstetric services ("OB"), which previously had a presence at both facilities, solely at Roosevelt; (2) Similarly to consolidate its neonatal intensive care unit ("NICU") at Roosevelt; (3) Similarly to consolidate its pediatric inpatient care services ("pediatrics") at Roosevelt; and (4) To reduce the number of general medical-surgical beds at St. Luke's by more than 200 beds.

Plaintiffs consist of (1) low income African American and Latino adults and children living in the vicinity of St. Luke's, (2) churches located in the vicinity of St. Luke's and having congregation members living in the vicinity of St. Luke's, and (3) certain other organizations. Plaintiffs essentially allege that the shifting of services to the Roosevelt site will discriminate against Medicaid beneficiaries, African Americans and Latinos because it will be done with the intent of and will have the effect of reducing the number of persons in these categories who will utilize SLRHC. Plaintiffs seek a declaratory judgment that the above-mentioned changes will violate federal and state law because they discriminate against Medicaid patients and on the basis of race, basing claims on Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, and the Equal Protection clause of the United States Constitution by way of 42 U.S.C. § 1983, and they seek to enjoin such changes on the same grounds, basing these claims on the Hill–Burton Act, 42 U.S.C.

§§ 291 *et seq.,* and Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a *et seq.* Analogous relief based on violations of state law is sought as well.

Defendants now move to dismiss the complaint and for summary judgment.

*Discussion*

Defendants move to dismiss the complaint on the following grounds: (1) the claims are not a "case or controversy" because they are not ripe; (2) the plaintiffs lack standing to assert the claims; (3) the claims are barred by statutes of limitations; (4) the claims are barred by laches; (5) the complaint fails to allege the elements of the causes of action.

*Ripeness*

■ Defendants claim that aspects of this case are not justiciable because (1) There is no current plan to reduce the number of beds by 212; although there is an outstanding directive from the New York Commissioner of Health to do so, this instruction has apparently been deferred at least until 1995, and will be reviewed at that time; (2) As a result of community pressure, the OB and NICU services at St. Luke's will be continued, although the number of beds in OB will be reduced from 58 to 22 and in NICU from 16 to 14. Thus, argue defendants, plaintiffs' claim is only ripe as to the pediatric unit.

Plaintiff responds that SLRHC has only bound itself to maintain these levels of service for two years, and thus the injury is still threatened, and that in any event the depletion in OB and NICU services itself presents a sufficient controversy.

■ Jurisdiction of the federal courts is limited to actual cases and controversies. U.S. Const. art III; *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Under the doctrine of ripeness, a controversy must be sufficiently concrete before it may be brought to federal court. *See Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council,* 857 F.2d 55, 63 (2d Cir.1988).

■ This case is ripe as to the pediatrics, OB and NICU allegations, but not as to the allegations regarding the removal of the 212 medical-surgical beds. The significant planned reduction in OB services and wholesale elimination of pediatrics renders those issues ripe; while numerically the change in NICU seems minor, it still may be a sufficient ground for these claims. Plaintiffs' claims do not depend upon a total elimination of particular services, but rather on the reductions in those services, be they partial or complete.

On the other hand, the elimination of the 212 beds will be based on a number of contingencies, and thus does not present a current controversy. The evidence submitted establishes that any decision to reduce the number of medical-surgical beds at St. Luke's has been delayed at least until 1995, at which time it will be wholly re-evaluated. There being no present plan to reduce the number of medical-surgical beds at St. Luke's, any claim based on such reduction necessarily revolves around a hypothetical situation and is not properly the subject of a suit in federal court.

*Standing*

*Individual Plaintiffs*

■ Defendants claim the individual plaintiffs lack standing because they cannot allege injury as a result of the actions complained of. Parties seeking to invoke federal jurisdiction must establish: "(1) personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged; and (3) that the injury is likely to be redressed by the requested relief." *Garelick v. Sullivan,* 987 F.2d 913, 919 (2d Cir.1993) (quoting *Heldman v. Sobol,* 962 F.2d 148, 154 (2d Cir.1992)); *see Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). There is no dispute as to the second and third elements.

Defendants claim that since none of the plaintiffs has alleged a significant likelihood of need for OB, NICU or pediatric services in the near future, more specifically because none of the plaintiffs claim to be pregnant or currently seeking hospital care, the first element of the standing test is not fulfilled.

Plaintiffs' allegations and affidavits indicate as follows: Plaintiff Yvonne Mussington

has been utilizing St. Luke's pediatric services for her three children. Her seven-year-old son, Jonathan Jacobs, also a plaintiff in this case, has had grand mal epileptic seizures for which he has received care at St. Luke's. Plaintiff Rosemary Johnson has delivered three children at St. Luke's, most recently in November, 1992; two of these children have received inpatient services at St. Luke's as has Ms. Johnson.

The individual plaintiffs have alleged a threat of injury sufficient to confer standing. Plaintiffs claim that the lowered level or elimination of service will lessen the health resources available to them, which resources are likely to be needed by plaintiffs in the near future. If indeed defendants have discriminated in violation of applicable law, plaintiffs are clearly the targets of that discrimination.[1]

### Organization Plaintiffs

Although organizations may obtain standing purely on their own behalf, *see Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982), here the plaintiff organizations seek to redress injury caused to their members.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

■ The three church plaintiffs lack standing because the interests sought to be protected are not sufficiently germane to their purpose. Although plaintiffs claim that "the churches have as their purpose the spiritual, mental and physical well-being of their membership and their communities," Plaintiffs' Answer Brief p. 16, as SLRHC points out such a rationale would render standing for churches "in nearly every public or private action that any one of their members could have brought," Defendant's Brief in Support p. 19. While churches may certainly deserve associational standing in certain cases, for example, those involving religious issues, *see, e.g., Church of Scientology of California v. Cazares*, 638 F.2d 1272 (5th Cir.1981), they are not appropriate plaintiffs merely because they are concerned with the well-being of their community and feel it threatened by other parties. Accordingly, the three churches lack standing.

■ Similarly, two of the organizations have purposes too broad to confer standing in this case. Plaintiff the Riverside Church Office of Social Justice has as its closest stated nexus that it oversees a broad community service program, Exh. 6 to Plaintiff's Answer Brief, and plaintiff the Upper Manhattan Anglican/Episcopal Clergy Association seeks "to maintain the presence of the Episcopal Church in Upper Manhattan and to foster and perpetuate the individual missions of the parishes represented," Exh. 9 to Plaintiff's Answer Brief. For the reasons stated above, these two organizations also lack standing.

■ On the other hand, plaintiff the Religious Committee on the City of New York Health Crisis, Inc. (the "Religious Committee") has stated its purpose is "to fight for adequate health services for the poor and underserved of New York City." Exh. 8 to Plaintiff's Answer Brief. Clearly, this purpose is more closely related to the claims presented and is sufficient to satisfy the second requirement enumerated in *Hunt*. However, neither in the pleadings nor in supporting affidavits do plaintiffs claim that the Religious Committee has members who are significantly threatened with injury such

---

1. Defendant urges that *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), in which standing to challenge an abortion statute was denied to a couple where the wife was not and had never been pregnant, dictates that at least the adult plaintiffs, who are not pregnant now and do not allege intention to become pregnant, lack standing here. *Roe* is clearly distinguishable, however, in that here the plaintiffs have each already needed and used the services to be reduced and it is not too remote a possibility that they will again. Defendant's other cases are similarly distinguishable.

as to confer standing;[2] at best, plaintiffs allege that some Religious Committee members use St. Luke's generally and that all members will be harmed by these changes. Thus, on the pleadings and record as they now stand, the Religious Committee also cannot be found to have standing.

### Statute of Limitations

■ Defendants claim that the statute of limitations on the Title VI and § 1983 claims has run[3] because the plaintiffs "knew or had reason to know" of the injury in March, 1987 when the plan was finalized. Plaintiffs respond that the "continuing violation" exception is applicable here, inasmuch as the alleged discrimination and receipt of federal funds is ongoing.

■ To determine the date on which the statute of limitations begins to run, "[t]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (emphasis in original; quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979)); *see Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 906–07, 109 S.Ct. 2261, 2266, 104 L.Ed.2d 961 (1989). Thus, the Supreme Court has ruled that the statute of limitations on a discrimination claim began when an employee was notified of his impending termination rather than on the date of termination itself, even though the termination was not to take place for 12 to 43 days after the notice. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). The relevant date is when the "operative decision" to act is made, since it is the decision, rather than the action itself, which is the basis of a discrimination claim. *Chardon,* 454 U.S. at 8, 102 S.Ct. at 29. However, the decision must have an element of finality about it, *id.,* since without that degree of certainty a plaintiff

would not have sufficient notice of the claim nor would the claim be ripe for adjudication. *See supra.*

■ In December of 1986, DOH approved the plan submitted by SLRHC (which included consolidation of the OB, NICU and inpatient pediatric services at Roosevelt) with significant contingencies, such as the securing of adequate financing. The 1986 approval also specifically deferred decisions regarding the distribution of inpatient beds between St. Luke's and Roosevelt because of community concerns which had been voiced, and the DOH directed that meetings with local planning boards take place in order to assess the issues. In March of 1987, DOH reiterated its approval of the plan after significant input regarding the distribution of inpatient beds, but still attached numerous conditions to the reduction of obstetric beds at St. Luke's, among them that SLRHC work with other area hospitals to insure sufficient obstetric capacity and that a re-assessment of obstetric needs at St. Luke's take place after the obstetric unit at St. Luke's had been closed for one year. In August of 1989, the DOH noted that all formal contingencies had been satisfied and SLRHC could begin to implement the plan.

In July of 1990, citing "social" rather than health or medical reasons, DOH ordered that SLRHC modify its plans so as to retain 22 OB beds and 14 NICU beds at St. Luke's. SLRHC apparently complied by July of 1992.

Viewing this entire history, it is clear that the decision by SLRHC to perform the actions that are the basis of this complaint, namely the *reduction or termination of OB, NICU and inpatient pediatric services* at St. Luke's, was made initially in 1986, and gained a sufficient degree of certainty by August 1989 at the latest. That some additional obligations to work in concert with other area hospitals and re-assess the needs for these services were imposed does not

---

**2.** Indeed, no such claim is made as to any of the organizational plaintiffs.

**3.** Note that there is no statute of limitations to be applied to the claims under the Hill–Burton Act or Title II, since those claims may only be for injunctive relief and therefore have no limitations

period. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Swan v. Board of Higher Ed. of City of New York,* 319 F.2d 56, 59–60 n. 5 (2d Cir.1963). These claims are, however, subject to the doctrine of laches. *See infra.*

detract from the fact that the decision to eliminate these services was essentially crystallized by August 1989. The subsequent decision to reinstate a reduced level of OB and NICU services does not itself amount to a discriminatory act (if anything, just the reverse), nor does it tend to imply a lack of finality of the August 1989 approval. "[T]he mere possibility that the decision might be reversed [i]s not enough to label it advisory or ineffective for time-bar purposes." *Miller v. IT & T Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *see Ricks*, 449 U.S. at 260–62, 101 S.Ct. at 505–06.

 Plaintiffs claim that defendants' conduct is in fact a "continuing violation" of discrimination laws, and as such is constantly tolling the statute of limitations. "When an employer engages in a continuous practice and policy of discrimination, 'the commencement of the statute of limitations may be delayed until the last discriminatory act in furtherance of it.'" *Blesedell v. Mobil Oil Corp.*, 708 F.Supp. 1408, 1414 (S.D.N.Y.1989) (quoting *Miller*, 755 F.2d at 25). The parties agree that this analysis is appropriate for discrimination claims based on conduct other than employment. However, "a continuing violation may not be based on [a plaintiff's] having suffered from the effects of an earlier discriminatory act," *Miller*, 755 F.2d at 25; *see United Air Lines Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Blesedell*, 708 F.Supp. at 1414. To show a continuing violation, plaintiffs must show a sequence of related discriminatory acts, at least one of which occurred during the limitations period, or a discriminatory system maintained during that period. *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C.Cir.1982); *LaBeach v. Nestle Co.*, 658 F.Supp. 676, 687 (S.D.N.Y.1987). Moreover, "courts of this circuit consistently have looked unfavorably on continuing viola-

tion arguments." *Blesedell*, 708 F.Supp. at 1415.

Plaintiffs claim a continuing violation is occurring "as long as SLRHC continues to receive federal funds and to plan to reduce services based on participation in the Medicaid program, race and national origin." Plaintiff's Memorandum in Opposition to SLRHC Motion to Dismiss p. 11. Plaintiffs also claim that DOH's continued jurisdiction over the plan and requirement of re-assessment tolls the statute of limitations. Neither contention is sufficient to alter the conclusion that the alleged discriminatory acts central to plaintiffs' claims are the decision of SLRHC to reduce its services and the approval by DOH of that plan.

Thus, applying a three-year statute of limitations[4] running from August 1989, the date at which the former decision gained a significant degree of certainty and at which the latter approval was given, it is clear that plaintiffs' Title VI and § 1983 claims are time-barred.

*Laches*

 SLRHC claims that plaintiffs are estopped from asserting their claims for equitable relief under the doctrine of laches. To succeed in this argument, SLRHC "must show (1) lack of diligence by the party against whom the defense is asserted and (2) prejudice." *Southside Fair Hous. Comm. v. City of New York*, 928 F.2d 1336, 1354 (2d Cir.1991). In *Southside*, plaintiffs were Latino and African American citizens and an organization of same who sought to block the development of nearby land by the United Talmudic Academy into a school, dorms, and a synagogue, claiming that state involvement in creating such a "white Hasidic enclave" was a violation of the First Amendment and equal protection. In addition to dismissing the claims on the merits, *id.* at 1344–54, the Second Circuit found plaintiffs' claims barred by the doctrine of laches because plaintiffs had "waited more than fourteen months [af-

---

4. Because these causes of action accrued before December 1, 1990, the new general federal statute of limitations does not apply, and thus we must borrow a closely analogous state limitations period. It is undisputed that for § 1983 suits, the New York statute of limitations for personal injury actions, three years, applies, *Owens v.*

*Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); inasmuch as the Title VI claim is also based on a violation of civil rights, the same statute of limitations is appropriate for it as well, *Barcia v. Sitkin*, 89 F.R.D. 382, 385 (S.D.N.Y. 1981).

ter construction began] to commence this lawsuit—after more than ten years of no opposition to the Academy's developing plans," *id.* at 1355. Prejudice was found in that the Academy had expended millions of dollars developing the site and raised millions more. *Id.*

SLRHC claims that this case falls directly under *Southside,* in that plaintiffs have known of these plans since 1986 but took no action until 1992, after SLRHC had expended more than $300 million in constructing new facilities and the project was virtually complete. Plaintiffs respond, and SLRHC does not dispute, that plaintiffs and others have been vehemently opposing this plan in the public arena, and that such actions constitute reasonable diligence. Plaintiffs would distinguish *Southside* on this basis, since in that case plaintiffs had voiced no public opposition despite numerous opportunities, but rather "largely supported the Academy's plans or stood mute." 928 F.2d at 1355.

While plaintiffs actively protested the decisions of SLRHC and DOH and petitioned for their alteration, they concede that, until institution of this suit, they had taken no legal action to assert the rights which are the foundation of their complaint. The political arena may be an appropriate forum for seeking change in services such as these, however, it is also true that plaintiffs may not forestall pursuing equitable remedies until the eleventh hour. "[L]aches asks whether the plaintiff in *asserting her rights* was guilty of unreasonable delay that prejudiced the defendants." *Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.) (emphasis added), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 *vacated on other grounds,* 891 F.2d 401 (1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). While the Second Circuit in *Southside* did take notice of the failure of plaintiffs publicly to oppose the construction plans, it in no way found this failure dispositive.

Construction on the new facilities at St. Luke's and Roosevelt began soon after the DOH approval in 1989, and continued for approximately three years. The planned consolidations and alterations in services were well-publicized, and there is no claim that plaintiffs were in any way unaware of the intentions of SLRHC. Nonetheless, and despite a vociferous opposition to the plans in the public forum, plaintiffs did not seek to enforce their rights in court until just before the completion of construction, after SLRHC had raised and spent over $300 million. While the injunctive relief plaintiffs demand would not render useless the entirety of the new facilities, the evidence submitted clearly establishes that such changes would impose substantial additional costs, in the millions of dollars, which might well have been avoided had they been made in the planning stages. Thus, the prejudice to SLRHC is manifest, and plaintiffs' delay in seeking equitable relief will bar these claims.

*Failure to State a Claim*

Because the federal claims will be dismissed for lack of timeliness, the merits need not be decided at this time.

*State Claims*

■■■ The Eleventh Amendment prohibits a federal court from entertaining a claim for injunctive relief against a state official based on violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). Recognizing this, plaintiffs concede that their state equal protection claim against DOH requires dismissal.

As to the other state law claims, since the federal claims over which this Court has original federal jurisdiction are dismissed, this Court declines to retain supplemental jurisdiction over the accompanying state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991).

*Conclusion*

For the foregoing reasons, this case is DISMISSED as against all defendants.

SO ORDERED.