Mahmood M. YOONESSI, M.D., Plaintiff,

v.

**STATE UNIVERSITY OF NEW YORK, et al., Defendants.**

No. 93–CV–92A.

United States District Court, W.D. New York.

Aug. 26, 1994.

Albert Grande, West Seneca, NY, for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, Gail Y. Mitchell, Asst. Atty. Gen., of counsel, Buffalo, NY, for State defendants.

Linda Callahan Laing, Saperston & Day, P.C., Buffalo, NY, for Children's Hosp. defendants.

Mary K. Roach, Falk & Siemer, Buffalo, NY, for Millard Fillmore defendants.

Kenneth A. Schoetz, Erie County Atty., Timothy J. Trost, Asst. County Atty., of counsel, Buffalo, NY, for defendant Erie County Medical Center.

## DECISION AND ORDER

ARCARA, District Judge.

This case is currently before the Court pursuant to 28 U.S.C. § 636(c)(4) and Rule 30(b)(2)(B) of the Local Rules for the United States District Court for the Western District of New York, on an appeal by the plaintiff, Mahmood M. Yoonessi, from a judgment entered by order of United States Magistrate Judge Carol E. Heckman on November 30, 1993. The complaint in this action was filed on January 29, 1993. All the defendants in the case eventually moved to dismiss the complaint. On June 7, 1993, the Court referred the case to Magistrate Judge Heckman for all pretrial matters, and to hear and report upon dispositive motions. On August 17, 1993 the parties, pursuant to 28 U.S.C. § 636(c)(1), consented to have Magistrate Judge Heckman conduct any and all proceedings in this matter and to order entry of judgment in the case. The parties reserved the right to appeal the judgment to this Court and the Second Circuit Court of Appeals. See Item No. 21. In a Decision and Order dated November 22, 1993, Magistrate Judge Heckman granted defendants summary judgment pursuant to Fed.R.Civ.P. 56. It is from Magistrate Judge Heckman's Decision and Order of November 22, 1993 and subsequent judgment that plaintiff now appeals. The parties have been given an opportunity to brief and argue their respective positions.[1]

In an appeal from a judgment ordered entered by a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), the district court must consider the appeal in the same manner as an appeal from a judgment of the district court to the court of appeals. See 28 U.S.C.

1. Plaintiff chose to argue his case at oral argument himself rather than to have his attorney represent him. See Item No. 40.

§ 636(c)(4) and Rule 30(b)(2)(B)(v) of the Local Rules for the United States District Court for the Western District of New York. When reviewing a district court's grant of summary judgment, the court of appeals applies a *de novo* standard of review, assessing the record in the light most favorable to the non-moving party and applying the same standard as that applied by the district court. *See Commercial Union Assurance Co. v. Milken,* 17 F.3d 608, 611 (2d Cir.1994). Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

After reviewing the submissions of the parties, hearing oral argument, and reviewing the record in this case *de novo,* the Court affirms the Judgment ordered entered by Magistrate Judge Heckman on November 30, 1993 for the reasons articulated in her Decision and Order dated November 22, 1993.

IT IS SO ORDERED.

### DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

All defendants have moved for dismissal of the complaint pursuant to Fed.R.Civ.P. 12 and/or for summary judgment pursuant to Fed.R.Civ.P. 56. The parties have consented to have the undersigned hear and decide these motions, pursuant to 28 U.S.C. § 636(c)(4) (Item 21).

For the following reasons, defendants' motions are granted, and the case is dismissed in its entirety.

### BACKGROUND

Plaintiff is a gynecological oncologist who became a member of the faculty of the School of Medicine at State University of New York at Buffalo ["SUNY"] on July 8, 1976. His complaint in this action alleges that on March 20, 1991, he was wrongfully terminated by SUNY from his position as tenured Associate Professor as a result of the decision of an arbitrator for the State Office of Employee Relations. He also alleges that, based on this same arbitrator's decision, he was denied staff privileges at Children's Hospital of Buffalo and was denied the opportunity to apply for staff privileges at Millard Fillmore Hospital.

Plaintiff asserts that his employment was terminated or denied because he is of Iranian ethnic origin, in violation of the due process and equal protection clauses and in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 2000e–2(a). He also alleges that he was deprived of substantial earnings by the faulty accounting and billing system employed by SUNY's Faculty Clinical Practice Management Plan. Named as defendants are SUNY and various of its officers (the "state defendants"), Children's Hospital and various of its officers ("Children's Hospital defendants"), Millard Fillmore Hospital and one of its officers, and Erie County Medical Center.

The factual background of the dispute is set forth at length in the arbitrator's decision, which is attached to the complaint as Exhibit A (Item 1). In 1984, during plaintiff's employment at SUNY, the medical school implemented its Clinical Practice Management Plan (the "Plan") under which full-time medical faculty were required to turn over earnings from clinical services performed at affiliated hospitals to help defray medical school overhead costs. The earnings were then distributed to the faculty member who performed the services, in accordance with a pre-arranged formula (Item 1, Exh. A, p. 4).

Shortly after the Plan was implemented, plaintiff began to complain about the way funds were disbursed and earnings were reported. Unsatisfied with the responses to his complaints, plaintiff adopted a billing system for his clinical practice independent of the Plan's billing methods. This action resulted in a letter to plaintiff dated June 22, 1988 from defendant Dr. Myroslaw M. Hreshchyshyn, Chair of SUNY at Buffalo's Department of OB/GYN, and Dr. Donald Larson (not a defendant), SUNY at Buffalo's Associate Vice President for Clinical Affairs, which directed plaintiff to comply with the Plan billing practices within 30 days or face disciplinary action (*id.,* pp. 9–10).

Plaintiff responded by letter from his attorney dated August 3, 1988, which purport-

ed to explain plaintiff's reasons for refusing to bill his clinical work through the Plan billing system (*id.*, pp. 11–13). By letter dated August 15, 1988 from Clifford B. Wilson (SUNY's Vice President for Human Resources), plaintiff was given an additional 5 days to comply with the Plan billing practices (*id.*, pp. 13–15).

Plaintiff's continued refusal to comply resulted in a Notice of Discipline pursuant to the procedures set forth in the collective bargaining agreement then in effect between SUNY and the United University Professions, Inc. (*see* Item 23, Attachment D). The notice, dated August 30, 1988, and signed by defendant Steven B. Sample, President of SUNY at Buffalo, charged plaintiff with misconduct for failure to resume billing for patient services through the approved Plan billing agency, as previously directed. The penalty imposed was termination of employment within ten days of receipt of the notice. The five reasons for termination set forth in the notice were as follows:

1. failure to resume billing for patient services through the approved Faculty Practice Plan billing agency;

2. failure to abide by Plan and departmental rules for receiving payments for patient services, and for banking and disbursement of Plan money;

3. failure to submit to the Plan billing agency all monies collected from patient billing since January 1, 1988;

4. failure to provide the Plan billing agency with documentation necessary to maintain his accounts from January 1, 1988; and,

5. failure to cease performance of medical procedures in non-University affiliated hospitals.

(Item 23, Exh. A).

On September 8, 1988, plaintiff filed a grievance with his union based on this Notice of Discipline. Pursuant to the grievance procedures in the collective bargaining agreement, hearings were held before a designated arbitrator in July and September, 1990. The union appeared on plaintiff's behalf.

In an award dated February 1, 1991, Arbitrator Thomas N. Rinaldo found that plaintiff had engaged in a persistent course of insubordination, but that immediate termination was not appropriate because the insubordination did not affect his primary duties as an instructor. Plaintiff was given thirty days from the date of the union's receipt of the award to comply with SUNY's directives, as set forth in the Notice of Discipline. The arbitrator also found that if plaintiff did not comply within 30 days, SUNY could terminate him (*id.* pp. 21–28).

Plaintiff alleges that he attempted to comply with the conditions set forth in the award (*see* Item 16, Exh. J), but was terminated anyway on March 20, 1991. On May 19, 1992, the union denied plaintiff's request to arbitrate the compliance issue (Item 1, Exh. C).

Plaintiff filed this action on January 29, 1993. The complaint sets forth five claims. First, plaintiff claims that he was discriminated and retaliated against on account of his ethnic origin, in violation of 42 U.S.C. §§ 1981, 1983, 1985, 2000e *et seq.* (Title VII) and the Civil Rights Act of 1991. Second, plaintiff claims that SUNY terminated his appointment, Children's Hospital terminated his staff privileges, and Millard Fillmore denied his application for staff privileges without giving him the opportunity to be heard, in violation of his due process rights. Third, plaintiff claims that SUNY terminated his continuing appointment, and that Children's and Millard denied his staff privileges because of his ethnic origin, in violation of the equal protection clause. Fourth, plaintiff claims that he has suffered damages due to the Plan's failed billing system and SUNY's discriminatory conduct. Fifth, plaintiff claims that SUNY and the hospitals denied him the opportunity for a "name-clearing" hearing, in violation of due process.

### DISCUSSION

█ As an initial matter, all of the defendants have asserted statute of limitations as a ground for dismissal, and have submitted affidavits and exhibits in support of their limitations arguments. Since the discussion below deals substantially with statute of limitations questions, and since the court has considered the information contained in the

affidavits and exhibits presented, the motions to dismiss are converted to motions for summary judgment under Rule 56. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir.1978); 2A *Moore's Federal Practice* ¶ 12.10, p. 12–87. The court has notified the parties of the conversion, and has allowed appropriate supplementation of the record. *Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1987).

### I. The State Defendants.

The state defendants have moved to dismiss on grounds of eleventh amendment immunity, failure to exhaust administrative prerequisites for an employment discrimination claim, and failure to state a claim upon which relief can be granted under 42 U.S.C. §§ 1981, 1983 and 1985. Each of these grounds will be discussed in turn.

#### A. Eleventh Amendment Immunity.

The eleventh amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has consistently held that the eleventh amendment's literal prohibition of suits against a state brought by citizens of another state extends as well to suits against a state brought by its own citizens. *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

Thus, in the absence of the state's consent to be sued in a federal forum, or congressional authorization to do so, any legal or equitable claims based on alleged constitutional violations brought by private parties against the state or one of its agencies or departments are proscribed by the eleventh amendment. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984). Since SUNY "is an integral part of the government of the State [of New York] and when it is sued it is the real party ...," *State University of New York v. Syracuse University*, 285 A.D. 59, 61, 135 N.Y.S.2d 539, 542 (3rd Dept.1954), and since SUNY has not consented to suit in this forum, *see Dube v. State University of New York*, 900 F.2d 587, 594 (2d Cir.1990), *cert. denied sub nom. Wharton v. Dube*, 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991), no relief is available against SUNY for the constitutional violations alleged by plaintiff. Accordingly, the state defendants' motion to dismiss is granted to the extent that the complaint alleges constitutional violations against SUNY under 42 U.S.C. §§ 1981, 1983 and 1985.

This proscription extends to suits based on constitutional violations for monetary damages against individuals acting in their official state capacities. Since "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," they are not subject to liability for deprivations of constitutional rights under that statute. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Edelman v. Jordan, supra*, 415 U.S. at 677, 94 S.Ct. at 1362–63 (when a plaintiff sues a state official alleging violation of federal law, court may award an injunction directed to future conduct but not retroactive monetary relief); *see also Dube v. State University of New York, supra*, 900 F.2d at 595.

Additionally, a federal court's grant of injunctive relief against a state official may not be based on violations of state law. *Pennhurst, supra*, 465 U.S. at 106, 104 S.Ct. at 911; *Dube, supra*, 900 F.2d at 595.

Thus, under established constitutional law, plaintiff's constitutional claims brought under 42 U.S.C. §§ 1983 and 1985 against the individual state defendants acting in their official capacities for monetary damages, as well as for injunctive relief based on state law, must be dismissed. The complaint must also be dismissed as a matter of law to the extent it alleges constitutional claims for reinstatement against the individual state defendants in their personal capacities, since those persons are powerless to grant such relief.

To the extent the complaint alleges constitutional claims for reinstatement against the individual state defendants in their official

capacities, and for monetary relief against the individual state defendants in their personal capacities, those claims survive this aspect of the state defendants' motion, and will be discussed at further length below.

## B. Title VII.

 The eleventh amendment bar is not applicable to suits for monetary damages for employment discrimination under Title VII of the Civil Rights Act. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Dwyer v. Regan,* 777 F.2d 825, 835 (2d Cir.1985); *Ritzie v. City University of New York,* 703 F.Supp. 271, 277 (S.D.N.Y.1989). However, the state defendants have moved to dismiss the Title VII claim against them based on plaintiff's failure to fulfill the statutory condition precedent of timely filing a charge with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR").

Plaintiff alleges in his complaint that he attempted to file such charges with the EEOC, but was denied the opportunity to do so because the EEOC investigator wrongly determined that plaintiff did not attempt to file charges until October 31, 1991, more than 300 days after the date of the alleged discrimination on August 30, 1988 (the date of the Notice of Discipline). Plaintiff alleges that the discrimination did not take place until June 9, 1992, the date on which the union's decision not to arbitrate the compliance issue became final, or at the earliest February 1, 1991, the date of the arbitrator's decision, or March 20, 1991, when his termination actually took effect.

 The statutory scheme of Title VII requires that individuals claiming discrimination first assert their claims at the agency level. *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122, *reh'g denied,* 474 U.S. 1015, 106 S.Ct. 552, 88 L.Ed.2d 479 (1985). Specifically, 42 U.S.C. § 2000e–5 requires that a party must file a timely charge with the EEOC or a qualified state deferral agency (such as NYSDHR) and obtain a right to sue letter as a condition precedent to filing a Title VII

action. *Moche v. City University of New York,* 781 F.Supp. 160, 166 (E.D.N.Y.1992), *aff'd,* 999 F.2d 538 (2d Cir.1993). Under § 2000e–5(e):

> A charge under this section shall be filed within one hundred eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . ., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e–5(e)(1) (as amended by the Civil Rights Act of 1991, Pub.L. 102–166).

 In a state such as New York with a state anti-discrimination agency, the complainant has 300 days to file a complaint with the EEOC or NYSDHR. *See* 42 U.S.C. § 2000e–5(e); *see also Torres v. City University of New York,* 56 Fair Emp.Prac.Cas. (BNA) 1171, 1991 WL 143359, at *4 (S.D.N.Y.1991). Absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court. *Zipes v. Trans World Airlines,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982); *Moche v. City University of New York, supra,* 781 F.Supp. at 166–67. "Otherwise, a plaintiff would be able at his or her choosing to circumvent the Congressionally-created administrative scheme designed to facilitate compliance with or to settling disputes falling under Title VII." *Id.*

By letter dated May 6, 1992, EEOC Investigator Edith A. Arseneau notified plaintiff that his charge of discrimination against SUNY was untimely because he did not attempt to assert it until October 31, 1991 when he first visited the EEOC office, which was more than 300 days after the August 30, 1988 "alleged date of harm . . . ." (Item 1, Exh. B). The letter goes on to state that even though plaintiff was counseled on several occasions by the EEOC that his charge

was untimely, plaintiff insisted that the EEOC allow him to file a charge (*id.*). Investigator Arseneau sent plaintiff a draft "Charge of Discrimination Form" for his review and signature.

Plaintiff does not allege, and the record does not indicate, that he ever followed through with filing the charge. He merely asserts that Investigator Arseneau's determination of untimeliness was incorrect.

Plaintiff's failure to file an administrative charge is fatal to his Title VII complaint. But even if he had actually filed a charge when he attempted to do so on October 31, 1991, his charge would have been untimely.

▬ The cases are clear that the time for filing a charge with the EEOC or state agency begins to run on the date the plaintiff receives notice of the alleged discriminatory act, not on the date the decision actually takes effect. "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979), *quoted in Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (date of communication of tenure denial, not date of consequential termination one year later, was date on which 180–day period for filing charge with EEOC began to run). Thus, where there are no other allegations of illegal employment practices subsequent to the date the decision to terminate was made, the limitations period begins to run on that date, or on the date the employee was notified of the decision. *Ricks, supra* at 259, 101 S.Ct. at 504–05; *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). The relevant date is when the "operative decision" was made, since it is the decision, rather than the actual termination itself, which is the basis of a discrimination claim. *Mussington v. St. Luke's–Roosevelt Hospital Center*, 824 F.Supp. 427, 432 (S.D.N.Y.1993).

▬ Here, plaintiff was clearly notified of the decision to terminate his employment by means of the August 30, 1988 Notice of Discipline, which he received on September 1, 1988. *See* Moritz Affidavit, ¶ 7, attached to

Item 23. Plaintiff can point to no further discriminatory acts on the part of the state defendants subsequent to this date. The only alleged discrimination occurred—and the filing period began—at the time the decision to terminate was made by SUNY and communicated to plaintiff on August 30, 1988. This is so even though the effect of that decision—the eventual loss of employment at the medical school—did not finally occur until March, 1991. *See Delaware State College v. Ricks, supra*, 449 U.S. at 258, 101 S.Ct. at 504; *see also Miller v. IT & T Corp.*, 755 F.2d 20, 24 (2d Cir.) ("[T]he mere possibility that the decision might be reversed [i]s not enough to label it advisory or ineffective for time-bar purposes."), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Since plaintiff did not attempt to file a charge until October, 1991, more than three years after notification of SUNY's decision to terminate him for failure to comply with the requirements of the Plan, he is precluded from bringing a claim for employment discrimination under Title VII in this court.

▬ Furthermore, the filing and pendency of his grievance with the union did not toll the 300–day period for filing a charge with EEOC or NYSDHR. *Ricks, supra*, 449 U.S. at 261, 101 S.Ct. at 505–06 (citing *Electrical Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229, 236, 97 S.Ct. 441, 446–47, 50 L.Ed.2d 427 (1976)). This is because contractual rights under a collective bargaining agreement are legally independent from statutory rights under Title VII. *Electrical Workers, supra*, 429 U.S. at 236, 97 S.Ct. at 447. "In instituting an action under Title VII, the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process." *Alexander v. Gardner–Denver Cor.*, 415 U.S. 36, 54, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974).

▬ By admonishing plaintiff that his October, 1991 attempt to file his charge was untimely, the EEOC administrator did not subject plaintiff's claim to the principles of equitable tolling or waiver. For one thing, the administrator's determination of untimeliness was correct. As discussed above, plaintiff knew or reasonably should have

known upon receipt of the Notice of Discipline in late August or early September, 1988 that he was being terminated from his tenured position at the medical school. All of the conduct complained of by plaintiff took place before the date of the Notice of Discipline. Instead of preserving his rights by filing a timely charge of discrimination with the EEOC or NYSDHR, plaintiff immediately pursued the independent grievance and arbitration procedures under the collective bargaining agreement. The EEOC administrator was correct in concluding that the collective bargaining procedures did not toll the running of the 300–day period.

For another thing, after advising plaintiff that his charge was untimely, the EEOC administrator nevertheless sent plaintiff a charge form so that he could at least follow through with his attempts to exhaust administrative remedies and obtain a right to sue letter. Plaintiff never submitted the completed form. In short, he never exhausted the administrative remedies required as a condition precedent to filing an employment discrimination claim in federal court, and he has not established any legally sufficient reason for failing to do so.

Finally, the record reveals that plaintiff was represented by counsel throughout the course of events complained of in the complaint. Plaintiff should therefore have been aware of the requirements for and conditions precedent to filing a federal lawsuit for employment discrimination.

Accordingly, plaintiff has failed to demonstrate any equitable reasons why his Title VII claim should be allowed to proceed despite his failure to exhaust the administrative remedies provided by that statute. *Cf. Tadros v. Coleman*, 717 F.Supp. 996, 1009 (S.D.N.Y.1989), *aff'd.*, 898 F.2d 10 (2d Cir. 1990). Since there is no genuine issue as to plaintiff's failure to exhaust, the state defendants' motion for summary judgment on plaintiff's Title VII claim is granted, and that claim is dismissed as a matter of law.

### C. 42 U.S.C. §§ 1981, 1983, and 1985.

 Plaintiff's claims against the SUNY defendants under 42 U.S.C. §§ 1981, 1983 and 1985, to the extent that these claims are "based on substantive rights distinct from Title VII ...," *Carrero v. New York City Housing Authority*, 890 F.2d 569, 576 (2d Cir.1989), must also be dismissed as untimely. Actions under these statutes are governed by the state statute applicable to personal injury claims, which is three years in New York under CPLR § 214(5). *Day v. Morgenthau*, 909 F.2d 75, 78 (2d Cir.1990); *Tadros v. Coleman, supra*, 898 F.2d at 12. The three-year period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). In the context of a claim for wrongful termination of employment actionable under these statutes, the limitations period begins to run when the employee receives notice that the decision to terminate has been made, not the point at which the termination ultimately becomes effective. *Chardon v. Fernandez, supra*, 454 U.S. at 8, 102 S.Ct. at 29.

Here, as discussed above, plaintiff knew of SUNY's decision to terminate him, at the latest, upon receipt of the Notice of Discipline dated August 30, 1988. His claims under 42 U.S.C. §§ 1981, 1983 and 1985 accrued at that time, and his filing of a grievance with the union did not toll the running of the statute. Further, the record provides no evidence of bad faith or deliberate misconduct by the state defendants during the limitations period to suggest that they delayed plaintiff's filing of a complaint or that they should otherwise be equitably estopped from asserting a statute of limitations defense. *See Tadros v. Coleman, supra*, 898 F.2d at 12. Therefore, plaintiff's filing of this action on January 29, 1993, nearly four years and five months after receipt of the Notice of Discipline, was untimely.

 This analysis applies as well to plaintiff's equal protection and due process claims asserted independent of § 1983, since § 1983 provides the exclusive remedy for securing redress of constitutional violations. *Pauk v. Board of Trustees of City University of New York*, 654 F.2d 856, 865 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71

L.Ed.2d 866 (1982); *Turpin v. Mailet,* 591 F.2d 426 (2d Cir.1979) (*en banc*); *Gleason v. McBride,* 715 F.Supp. 59, 62 (S.D.N.Y.1988), *aff'd in relevant part,* 869 F.2d 688 (2d Cir. 1989).

Based on the foregoing, the state defendants' motion is granted in its entirety on the grounds of eleventh amendment immunity, failure to timely file an administrative claim prior to bringing a Title VII suit, and failure to timely file claims under 42 U.S.C. §§ 1981, 1983 and 1985. To the extent the complaint alleges claims against the state defendants based on state law, those claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3) based on this court's dismissal of all claims against those defendants over which it has original federal jurisdiction. *Ying Jing Gan v. City of New York,* 996 F.2d 522, 535 (2d Cir.1993); *Mussington v. St. Luke's– Roosevelt Hospital Center, supra,* 824 F.Supp. at 424.

## II. The Children's Hospital Defendants.

### A. Title VII.

▆▆▆ To the extent the complaint alleges a claim against the Children's Hospital defendants pursuant to Title VII,[1] that claim must likewise be dismissed for failure to comply with the statutory requirements for filing a timely charge with the appropriate administrative agency, as discussed above in relation to the state defendants.

Plaintiff does not allege any specific dates in his complaint pertaining to the alleged discriminatory acts of the Children's Hospital defendants. He asserts in his memorandum in response to this motion that he was discriminated against by the Credentials Committee on January 12, 1989, when the Committee failed to act on his application for reappointment. He further claims that he did not become aware of this discrimination until some later undisclosed date.

Defendants contend that the last act upon which an employment discrimination charge against these defendants could be based occurred on April 19, 1989, when plaintiff was

notified that his appointment had expired as of December 31, 1988, and that he had not submitted a completed form for reappointment (*see* Item 9, Exh. D).

As discussed above, the timeliness of an employment discrimination claim brought under Title VII or §§ 1981, 1983 or 1985 is measured from the date the claimant receives notice of the alleged discriminatory decision, not from the date the decision takes effect. *O'Malley v. GTE Serv. Corp.,* 758 F.2d 818, 820 (2d Cir.1985). In order to bring a claim for employment discrimination under Title VII against the Children's Hospital defendants, plaintiff would have had to file a charge with the EEOC or the NYSDHR within 300 days of April 19, 1989, the date he was notified that he would not be reappointed. There is no indication in the record that plaintiff ever attempted to file an administrative charge against the Children's Hospital defendants.

Furthermore, plaintiff has failed to demonstrate any reason why the running of the statutory time period should be equitably tolled. As discussed above, plaintiff knew or reasonably should have known as of August, 1988 that SUNY had made the decision to terminate his employment at the medical school. Plaintiff should also have known as of that date that he would need to take action to protect whatever staff privileges he may have been granted at area hospitals under SUNY's Faculty Clinical Practice Management Plan. The record indicates that plaintiff did nothing in this regard, but instead relied on the grievance and arbitration procedures in the collective bargaining agreement between his employer (SUNY) and his union. The hospital's failure to act on plaintiff's incomplete application, based in substantial part on plaintiff's own inaction, cannot be relied upon as the basis for a finding that the hospital was guilty of bad faith or misconduct in delaying the filing of plaintiff's administrative charge of employment discrimination against Children's Hospital.

---

1. The Children's Hospital defendants assert that Title VII is inapplicable to them since Plaintiff was never employed by Children's Hospital, nor does Plaintiff allege that he was. However, since the complaint was untimely, the court need not reach this issue.

■ At oral argument on the instant motions, plaintiff's counsel asserted for the first time that there is a discrepancy in the minutes of the Credentials Committee meeting on January 12, 1989. According to plaintiff, his copy of the minutes is significantly different than the copy submitted by counsel for the Children's Hospital defendants, indicating the possibility that the minutes may have been tampered with. Although not precisely stated in his pleadings, plaintiff apparently contends that this discrepancy in the minutes is evidence of bad faith during the limitations period requiring application of the principles of equitable estoppel or tolling in order to allow his civil rights claims against Children's Hospital to proceed.

■ However, plaintiff has failed to produce any evidence that the alleged tampering occurred during the limitations period so as to invoke the "continuing violation" exception to Title VII's stringent time limits. *See, e.g., LaBeach v. Nestle Company, Inc.,* 658 F.Supp. 676, 686–87 (S.D.N.Y.1987). Furthermore, in order to equitably estop the Children's Hospital defendants from asserting the limitations defense, plaintiff must produce some evidence of " 'deliberate design' or of actions which [the employer] 'should unmistakably have understood would cause the employee to delay filing his charge....' " *O'Malley v. GTE Serv. Corp., supra,* 758 F.2d at 822 (quoting *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982). The discrepancy in the minutes cited by plaintiff, even if deliberately caused by the Children's Hospital defendants, is simply insufficient to invoke the equitable principles of tolling and estoppel in this case.

Accordingly, plaintiff's Title VII claim as against the Children's Hospital defendants is dismissed as a matter of law for failure to comply with that statute's requirements for timely filing a charge with the appropriate administrative agency.

**B. 42 U.S.C. §§ 1981, 1983 and 1985.**

■ Based on the above discussion, the accrual date for claims under §§ 1981, 1983 and 1985 against the Children's Hospital defendants was April 19, 1989, when plaintiff was notified by Dr. Menchini that he would not be considered for reappointment until he submitted a completed application. Since plaintiff did not file his complaint in this action until January 29, 1993, more than three years and nine months after he received notice of the alleged discriminatory decision, these claims are barred by the three-year statute of limitations applicable under the authority cited above in relation to the state defendants.

Moreover, as discussed above, filing a union grievance does not suspend the running of either the statutory period for filing a charge of discrimination under Title VII or a claim under §§ 1981, 1983 or 1985.

Plaintiff argues that he should not be barred by the three-year statute of limitations since he did not know about the Credentials Committee's discriminatory policies at the time of the April 19, 1989 letter. However, plaintiff's self-serving, conclusory allegations, made without any specific factual support whatsoever, cannot be relied upon as a basis for tolling the statute of limitations until some unidentified date on which plaintiff allegedly discovered the existence of such a policy.

Accordingly, plaintiff's claims for relief under 42 U.S.C. §§ 1981, 1983 and 1985 as against the Children's Hospital defendants are dismissed as a matter of law for failure to commence claims under those statutes within the applicable statute of limitations. As discussed above with regard to the state defendants, this analysis applies as well to plaintiff's equal protection and due process claims asserted against the Children's Hospital defendants independent of § 1983, since § 1983 provides the exclusive remedy for securing redress of constitutional violations.

Finally, to the extent the complaint alleges claims against these defendants based on state law, the court declines to exercise supplementary jurisdiction over those claims since it has dismissed all claims against the Children's Hospital defendants over which it has original federal jurisdiction. 28 U.S.C. § 1367(c)(3). Consideration of the Children's defendants motion based on state law governing release from liability, immunity from

**1018**

suit under the state Public Health and Education Laws, and exhaustion of remedies under the state Public Health Law is therefore unnecessary.

### III. ECMC.

By letter dated May 24, 1989, ECMC notified plaintiff that his "payline" would be abolished as of July 1, 1989 (Item 4, Exh. A). For the reasons set forth above, plaintiff's complaint against ECMC must therefore be dismissed for failure to file a timely charge with the appropriate administrative agency as required by Title VII, and for failure to bring an action under §§ 1981, 1983 or 1985 within three years of the alleged discriminatory acts.

### IV. The Millard Fillmore Defendants.

#### A. Title VII.

Plaintiff's Title VII claim must also be dismissed as time-barred against the Millard Fillmore defendants, for substantially the same reasons. The only essential difference is the alleged accrual date. By letter dated January 24, 1990, Edward T. Wenzke, Secretary of Millard Fillmore Hospital's Board of Directors, notified plaintiff that his request for a staff appointment and privileges had been denied because SUNY did not approve the appointment, as required by the hospital's "Agreement of Affiliation" with SUNY (Item 7, Exh. A). Plaintiff claims that he did not receive this letter until, at the earliest, February 1, 1990, since it was sent to the wrong address, and in any event he was out of town until approximately February 9, 1990 and did not actually receive the letter until he returned (plaintiff's affidavit, ¶ 11, attached to Item 23).

Taking plaintiff at his word, he had 300 days from February 9, 1990, to file a charge of employment discrimination with the appropriate agency under the statutory framework of Title VII, but failed to do so. He has offered no reasons, other than those already discussed and rejected above, why equity should allow this action to proceed under Title VII against these defendants in the absence of exhaustion of that statute's administrative remedies. Accordingly, plaintiff's claim that he was denied employment at Millard Fillmore Hospital because of his national origin must be dismissed for failure to file a timely administrative charge.

#### B. 42 U.S.C. §§ 1981, 1983 and 1985.

If February 9, 1990 is accepted as the date plaintiff received notice of the alleged discriminatory conduct of the Millard Fillmore defendants, plaintiff's claims against those defendants under §§ 1981, 1983 and 1985 would not be time barred since they were filed within three years of that date. Thus, while §§ 1981, 1983 or 1985 cannot be used to circumvent the requirements of Title VII or "to gain perceived advantages not available to a Title VII claimant," *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 143 (2d Cir.1993), plaintiff can state cognizable claims under those statutes if he alleges some federal law or constitutional provision other than Title VII as the source of the right alleged to have been denied. *Id.; see Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1575–76 (5th Cir.), cert. denied, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1989).

Here, plaintiff has alleged generally that his application for staff privileges at Millard Fillmore Hospital "was unlawfully denied in violation of hospital by-laws and plaintiff's civil rights" (Item 1, ¶ III(5)). The complaint can also be liberally read to allege that Millard Fillmore (and Dr. Hreshchyshyn, as Chair of Millard's OB/GYN Department) denied him due process by denying staff privileges without a hearing (*id.,* ¶¶ VI(30), IX(38)), and denied him equal protection based on his Iranian origin (*id.,* ¶¶ VII(31–34)), in violation of his liberty and property rights under the fifth and fourteenth amendments.

However, the courts in the Second Circuit have consistently held that complaints relying on the civil rights statutes are plainly insufficient unless they contain some specific allegations of fact indicating a deprivation of the plaintiff's civil rights, rather than state simple conclusions. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988); *Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978); *Omni Group Farms, Inc. v. County of Cayuga,* 766 F.Supp. 69, 72 (N.D.N.Y.1991). The

allegations of constitutional violations must be amplified by specific factual allegations indicating a deprivation of civil rights, rather than conclusory, vague or general allegations that the plaintiff was denied a hearing or was not hired "because of" his national origin. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987) (complaint alleging denial of "prompt administrative hearing" insufficient under § 1983); *Martin, supra,* 588 F.2d at 372 (complaint alleging denial of salary and privileges commensurate with his position because of his race insufficient under Title VII).

■■■■ In the instant case, the complaint is totally devoid of allegations essential to pleading claims for relief under §§ 1981, 1983 and 1985 against the Millard Fillmore defendants. In order to state a claim for employment discrimination under § 1981, plaintiff must allege: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which Millard Fillmore was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and Millard Fillmore continued to seek applicants from persons of plaintiff's qualifications. *See, e.g., Scarlett v. Seaboard Coast Line Railroad Co.,* 676 F.2d 1043, 1052 n. 26 (5th Cir.1982) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). As discussed above, plaintiff's complaint against the Millard Fillmore defendants alleges none of these elements.

■■■■ In order to state a cause of action under § 1983, plaintiff must allege that the Millard Fillmore defendants deprived him of a right, privilege or immunity "secured by the Constitution and laws" of the United States, and that those defendants deprived him of this right acting "under color of any statute, ordinance, regulation, custom or usage" of the State of New York. 42 U.S.C. § 1983; *see Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). Beyond its failure to allege how the Millard Fillmore defendants qualify as "state actors" subject to § 1983 liability, *id.* at 156–57, 98 S.Ct. at 1733–34, the complaint also fails to allege how denial of medical staff privileges at Millard Fillmore Hospital deprived plaintiff of a federally protected property or liberty interest. Such allegations are essential in order for plaintiff to maintain this action in this court. *See, e.g., DiMarco v. Rome Hospital,* No. 88–CV–1258, 1991 WL 336000 (N.D.N.Y. 1991) (denial of medical privileges did not rise to the level of a protected property or liberty interest triggering due process protection), *appeal dismissed,* 952 F.2d 661 (2d Cir.1992). Again, as discussed above, the allegations in the complaint against the Millard Fillmore defendants fail miserably in this regard.

■■■■ Further, since plaintiff has failed to sufficiently allege deprivation of a federally protected interest, he has likewise failed to allege a cause of action under § 1985 for conspiracy to interfere with his civil rights. *See* 42 U.S.C. § 1985(3); *see also Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971).

■■■■ Finally, while the usual practice is to allow leave to replead a deficient complaint, *see* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990), leave may be denied where the amendment would be futile since the plaintiff is unable to allege any fact sufficient to support his or her claim. *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48, 50 (2d Cir.1991), *cert. denied sub nom. Cortec Industries, Inc. v. Westinghouse Credit Corp.,* —— U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); 3 Moore's Federal Practice ¶ 15.08[4] (1992 ed.). Under the above analysis of plaintiff's claims against the Millard Fillmore defendants, I find that plaintiff would be unable to amend the complaint so as to cure the defective claims against those defendants under any of the federal civil rights statutes cited. Accordingly, since amendment would be futile, plaintiff's claims under §§ 1981, 1983 and 1985 against the Millard Fillmore defendants must be dismissed with prejudice. To the extent the complaint alleges claims against these defendants based on state law, the court declines to exercise supplementary jurisdiction over those claims since it has dismissed all claims against the Millard Fillmore defendants over which it has original federal jurisdiction. 28 U.S.C. § 1367(c)(3).

**1020**

## CONCLUSION

For the foregoing reasons, the complaint must be dismissed in its entirety. There is no genuine issue of material fact as to plaintiff's failure to timely exhaust Title VII's statutory administrative remedies against any of the defendants, or his failure to assert timely claims under 42 U.S.C. §§ 1981, 1983 and 1985, against the state defendants, the Children's Hospital defendants, or ECMC. Pursuant to Fed.R.Civ.P. 56, summary judgment is entered as a matter of law in favor of the state defendants, the Children's Hospital defendants, and ECMC, dismissing the complaint in its entirety. Summary judgment is also entered as a matter of law dismissing the Title VII claim against the Millard Fillmore defendants. The remaining claims against the Millard Fillmore defendants are dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state claims upon which relief can be granted under 42 U.S.C. §§ 1981, 1983 and 1985. Finally, to the extent the complaint alleges claims based on state law, it is dismissed for failure of supplemental jurisdiction.

**SO ORDERED.**

DATED: Buffalo, New York, November 22, 1993.